Dan DURAN et al., Plaintiffs-Appellants,

v.

Richard ELROD et al., Defendants-Appellees.

No. 75–1898.

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1976.

Decided Oct. 22, 1976.

Richard Jay Hess, Thomas Grippando, Chicago, Ill., for plaintiffs-appellants.

Fredric B. Weinstein, Asst. State's Atty., Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, MARKEY, Judge,* and GRANT, Senior District Judge.**

FAIRCHILD, Chief Judge.

Plaintiffs, on behalf of a certified class of pre-trial detainees confined in the Cook County House of Correction and the Cook County Jail, appeal from an order of the district court dismissing three of approximately fifteen claims raised in Count II of their amended complaint. Appellate jurisdiction is based on 28 U.S.C. § 1292(a)(1), because the district court in dismissing portions of Count II *pro tanto* refused to grant the injunctive relief requested by the plaintiffs.

The portions of the amended complaint that were stricken by the district court alleged inadequate common facilities for recreation, exercise and reading; lack of visiting privileges with families and friends; and inability to earn money for bond and defense purposes.[1] Appellants brought this suit alleging both denial of due process and infliction of cruel and unusual punishment. A threshold question we must decide is which standard to apply to this case.

■ Strictly speaking, pre-trial detainees may not be punished at all because they have been convicted of no crime. The sole permissible interest of the state is to ensure their presence at trial. Following this reasoning, courts have held that suits by pre-trial detainees alleging conditions amounting to cruel and unusual punishment are better analyzed as due process attacks on conditions that exceed the sole permissible state interest of ensuring presence at trial. *See, e.g., Johnson v. Glick*, 481 F.2d 1028, 1032 (2d Cir. 1973); *see also, Collum v. Butler*, 421 F.2d 1257, 1259–60 (7th Cir. 1970). Other courts have held the Eighth Amendment prohibition against cruel and unusual punishment, incorporated in the Fourteenth Amendment, squarely applicable to state treatment of pre-trial detainees. *See, e.g., Johnson v. Lark*, 365 F.Supp. 289, 301–03 (E.D.Mo.1973); *Collins v. Schoonfield*, 344 F.Supp. 257, 264–65 (D.Md.1972). The Second Circuit prefers the analysis that a pre-trial detainee is entitled to protection from cruel and unusual punishment as a matter of due process and, where relevant, equal protection. *Rhem v. Malcolm*, 507 F.2d 333, 337–38 (2d Cir. 1974).

■ We hold that as a matter of due process, pre-trial detainees may suffer no more restrictions than are reasonably necessary to ensure their presence at trial. While the decisions that have interpreted the Cruel and Unusual Punishment Clause may be valuable by analogy as defining

---

* Chief Judge Howard T. Markey of the United States Court of Customs and Patent Appeals is sitting by designation.

** Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

1. The district court dismissed these portions of Count II instead of granting summary judgment for defendant. Therefore we treat the dismissal as one for failure to state a claim, Fed.R.Civ.P. 12(b)(6). But even if the dismissal be viewed as summary judgment for defendants, as appellees argue, our disposition of the case would be no different.

that which may never be imposed on any inmate, whether convicted prisoner or pre-trial detainee, a more stringent standard controls the treatment by the state of pre-trial detainees. Since they are convicted of no crime for which they may presently be punished, the state must justify any conditions of their confinement solely on the basis of ensuring their presence at trial. Any restriction or condition that is not reasonably related to this sole stated purpose of confinement would deprive a detainee of liberty or property without due process, in contravention of the Fourteenth Amendment.

Appellants' first argument is that the court erred in striking that portion of the amended complaint alleging lack of visiting privileges with family and friends, and lack of sufficient telephones.[2] We agree with appellants, reverse the dismissal, and remand for further consideration of the merits of this claim.[3]

This is not to say that the defendants must provide unlimited communication between pre-trial detainees and their families and friends. But the complaint alleges that Jail inmates can see visitors only twice a month, and House inmates only once a week; that some visitors, including children, are not allowed at all; and that no visitors are allowed during the evenings or on weekends, imposing a hardship on the visitors who have jobs. Expanding on the infrequency of authorized visits, appellants argue further that each tier in the jail has a visiting day twice a month that is assigned without reference to the convenience of visitors. For example, if a tier were assigned the first and third Tuesday of each month as a visiting day, and if the wife of a man on that tier could not get off from work on those days, he might well not see her at all.

▄▄▄ It seems to us that these allegations, together with other charges in the complaint, if proven, state a claim of denial of due process. At this stage of the litigation we must accept the allegations as true. Although we emphasize that unlimited communication between detainees and their families and friends is not required, the plaintiffs in this suit must be allowed to present evidence as to whether opportunities for detainees to communicate and receive visitors can be expanded without jeopardizing the security of the institutions or requiring unreasonable expenditures.

Appellants further challenge the district court's dismissal of that portion of the amended complaint alleging that pre-trial detainees have inadequate opportunity for exercise and recreation.[4] We reverse the

2. The court modified its decision to allow evidence concerning visits by and other communication with family and friends as far as it concerned the detainee's ability to prepare for trial.

3. The allegations stricken by the district court stated:

B. Pre-trial detainees are cut off from the outside world and denied an adequate opportunity to communicate with friends, family, lawyers, prospective witnesses, and others. They are seriously handicapped in preparing for their trial or in arranging for bond.

(1) Pre-trial detainees are denied an adequate opportunity to see visitors. Jail inmates can see visitors only twice a month, and House inmates only once a week. Some visitors, including children, are not allowed at all. Efforts are made to discourage others. Facilities for visiting are totally inadequate. Visitors often are limited to fifteen minutes or less because of overcrowding. No privacy is afforded. Visitors and inmates must shout at each other through solid glass partitions.

There are no visitors allowed in the evenings or on weekends so that those with jobs can visit.

(2) Pre-trial detainees have little or no access to telephones. There is no system for receiving incoming calls. There are no more than four telephones on which inmates may make calls in the entire jail, and not many more in the house. Inmates must make written requests to use phones which are routinely denied unless there is an 'emergency.' There is no privacy. Calls are either made for the inmates or guards listen to the conversations.

(3) Mail of inmates is inspected and censored, and indigent pre-trial detainees are limited in the number of letters they may send.

4. The allegations stricken by the district court stated:

11–D. Pre-trial detainees do not have adequate opportunity for exercise or recreation.

(1) When not in cells, inmates are normally restricted to the dayrooms described in para-

district court's dismissal of this portion of the amended complaint also, and remand for further consideration.

■ Among the appellants' claims are that two men are confined to a 5′ by 8′ cell, and that on some tiers a dayroom of 21′ by 31′ must be shared by 100 men. In *Detainees of Brooklyn H. of Det. for Men v. Malcolm*, 520 F.2d 392 (2d Cir. 1975), the court held that under the circumstances of that case, double celling of pre-trial detainees in cells 5′ by 8′ was constitutionally impermissible. Moreover, other courts have imposed various requirements concerning recreation and exercise opportunities in similar actions brought by pre-trial detainees. *See, e.g., Rhem v. Malcolm*, 371 F.Supp. 594 (S.D.N.Y.1974); *aff'd*, 507 F.2d 333 (2d Cir. 1974); *Collins v. Schoonfield*, 344 F.Supp. 257 (D.Md.1972); *Hamilton v. Love*, 328 F.Supp. 1182 (E.D.Ark.1971). Appellees' factual refutations of appellants' claims are not properly presented on this appeal. On remand, the parties will have an opportunity to present evidence as to the adequacy of recreation, exercise, and living facilities afforded pre-trial detainees.

■ Finally, appellants challenge the district court's dismissal of that part of their complaint alleging that "Pretrial (sic) detainees are denied the opportunity to work and earn money to make bond or to aid in the defense of the charges against them." This portion of the complaint is the least likely to succeed because pre-trial detainees are in custody, in lieu of bond, precisely to ensure their presence at trial. It might well be argued that daytime work release for detainees runs counter to the purpose of their detention. At oral argument, however, counsel for appellants contended that appellants also sought the opportunity to work *inside* the institutions on jobs or projects not necessarily provided by the state. On remand, appellants should be permitted to introduce evidence on this issue as well.

■ Pre-trial detainees are by definition deprived of their liberty, and such deprivation is without due process except to the extent it is necessary to serve important state interests. We recognize that various state interests such as institutional security and allocation of scarce financial resources are at issue in this case, but these are factual concerns that must be aired at trial.

Reversed and remanded for proceedings consistent with this opinion.

REVERSED.

graph A(2). The only indoor exercise is in a small gymnasium in the House. Inmates are allowed outdoors only infrequently.
(2) Inmates have insufficient reading material and access to library facilities. There are no lights in the cells and all lights in the dayroom are turned out after 10 p.m.

(3) Pretrial (sic) detainees are limited in the opportunity to participate in educational programs.
(4) Pretrial (sic) detainees are limited in the opportunity to engage in satisfying work.