Alvin **JORDAN** et al., Plaintiffs,

v.

Michael S. **WOLKE** et al., Defendants.

No. 77–C–81.

United States District Court,
E. D. Wisconsin.

Nov. 16, 1978.

Legal Action of Wisconsin by Patricia D. McMahon, George D. Edgar, Milwaukee, Wis., for plaintiffs.

Robert P. Russell, Corp. Counsel, Gerald G. Pagel, Asst. Corp. Counsel, Milwaukee, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The plaintiffs in this action are pretrial detainees incarcerated in the jail of Milwaukee County. In their complaint filed February 17, 1977, the plaintiffs claim that the conditions of the jail with respect to overcrowding, visitation, recreational and educational facilities, and medical and dental care violate their rights under the Fourteenth Amendment of the Constitution. Proceeding pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343, 2201, and 2202, the plaintiffs seek declaratory and injunctive relief on behalf of themselves and a proposed class consisting of "all pre-trial detainees who are or will be incarcerated as part of the general population of the Milwaukee County Jail because of their inability to post bond pending trial."

In an order dated June 13, 1977, pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure, I certified the plaintiffs' proposed class insofar as the issue of visitation was concerned, leaving resolution of the class certification question as to other issues for a later date. In my order dated January 31, 1978, (D.C.) 444 F.Supp. 599, I granted the plaintiffs' motion for a preliminary injunction with regard to visitation. The order required the defendants to expand the opportunities of pretrial detainees in their custody to receive both contact and noncontact visitation. In an order dated August 22, 1978, the court of appeals for the seventh circuit reversed my order granting a preliminary injunction insofar as it required the defendants to implement a program for contact visitation on the ground that the record at that point was insufficient to justify the affirmative requirements placed on the defendants.

On September 11, 1978, a trial was held on all the issues in this action. Pursuant to Rule 65(a)(2), Federal Rules of Civil Procedure, this trial was a consolidation of the hearing on the plaintiffs' application for a preliminary injunction and the trial of the action on the merits. At this hearing, the parties stipulated that a settlement had been reached as to the plaintiffs' claims for better medical and dental care. At the conclusion of the hearing, the class which previously had been certified as to the issue of visitation was certified as to the issue of overcrowding. Thus, the alleged lack of recreational and educational facilities, visitation, and the alleged overcrowding of the Milwaukee county jail are the three issues before me now for resolution on the merits.

## I. RECREATIONAL, EDUCATIONAL AND TRAINING FACILITIES

At the conclusion of the trial held on September 11, 1978, class certification was denied as to the plaintiffs' claim that a lack of recreational, educational and training facilities at the Milwaukee county jail violated the constitutional rights of the plaintiffs. Neither the plaintiffs nor the defendants included any arguments on this issue in their post-trial memoranda. Since I do not believe that the evidence presented at trial

was sufficient to sustain the plaintiffs' claim that their constitutional rights are being violated by a lack of recreational, educational and training facilities, said claim will be dismissed.

## II. VISITATION

### A. *Non-Contact Visitation*

█ Pursuant to my order of January 31, 1978, granting the plaintiffs' motion for a preliminary injunction, the defendants have implemented an expanded program of non-contact visitation for pretrial detainees. Due to the preliminary injunction and subsequent remedial orders issued by the court in this case, the current visiting conditions at the Milwaukee county jail are as follows: visiting hours have been expanded to thirteen hours per week, including four evening hours spread out over three days of the week; there are no longer any restrictions on who may visit other than restrictions based on valid security concerns regarding a particular visit or visitor, and the requirement that children must be accompanied by an adult; pretrial detainees have the opportunity for at least two visits per week, and the minimum length of each visit is 30 minutes on Sundays and 45 minutes on other visiting days. Visitation occurs at a facility on the third floor of the jail in which the visitor and detainee are separated by a physical barrier and must communicate by power phones. There is a plexiglass security window which allows the detainee and visitor to see one another during the visit.

Since, in my judgment, the program has proceeded in an orderly fashion, and the parties have introduced no further evidence directed specifically to the issue of non-contact visitation, I find that the preliminary relief granted in my order of January 31, 1978, and further implemented in my orders of May 18, 1978, and August 23, 1978, should become permanent as to the issue of non-contact visitation. *Capital City Gas Co. v. Phillips Petroleum Co.*, 373 F.2d 128 (2d Cir. 1967).

### B. *Contact Visitation*

The precise question facing the court is whether the defendants' present program for visitation at the Milwaukee county jail, which does not provide contact visitation for pretrial detainees, violates the constitutional rights of such detainees incarcerated in that facility. In answering this question, I must be guided by the legal standard stated by the court in *Duran v. Elrod*, 542 F.2d 998, 999–1000 (7th Cir. 1976).

"We hold that as a matter of due process, pre-trial detainees may suffer no more restrictions than are reasonably necessary to ensure their presence at trial. While the decisions that have interpreted the Cruel and Unusual Punishment Clause may be valuable by analogy as defining that which may never be imposed on any inmate, whether convicted prisoner or pre-trial detainee, a more stringent standard controls the treatment by the state of pretrial detainees. Since they are convicted of no crime for which they may presently be punished, the state must justify any conditions of their confinement solely on the basis of ensuring their presence at trial. Any restriction or condition that is not reasonably related to this sole stated purpose of confinement would deprive a detainee of liberty or property without due process, in contravention of the Fourteenth Amendment."

*See also Smith v. Shimp*, 562 F.2d 423, 425–26 (7th Cir. 1977).

The affidavits of several of the named plaintiffs in this case, as well as the testimony of at least two expert witnesses supports the conclusion that contact visitation is an important element to the psychological well-being of pretrial detainees. Dr. Thomas Murton, who professes to be an expert in the correctional area, testified for the plaintiffs in this case that

"[t]he less one removes an inmate or an offender from his normal social contacts, the less difficulty there is in moving him back through that tunnel into the normal society . . . . So it has been generally found that where contact visits are allowed that inmate morale is better,

there is more likelihood of maintaining familial ties, that relationships with children are greatly enhanced."

The defendants have offered no evidence to refute the testimony of the plaintiffs and the plaintiffs' experts as to the importance of contact visitation to pretrial detainees.

Several courts have reached the conclusion that contact visitation is important to the psychological well-being of pretrial detainees. *Rhem v. Malcolm*, 371 F.Supp. 594, 602–03 (S.D.N.Y.), *aff'd* 507 F.2d 33 (2d Cir. 1974); *Miller v. Carson*, 401 F.Supp. 835 (M.D.Fla.1975), aff'd, 563 F.2d 741 (5th Cir. 1977); *O'Bryan v. County of Saginaw, Michigan*, 437 F.Supp. 582 (E.D.Mich.1977). In *Rhem v. Malcolm*, 371 F.Supp. at 602, the court summarized one expert's opinion in the following way:

"Dr. Karl Menninger, the psychiatrist of national renown who has studied and written about prison conditions over a long lifetime, deplored non-contact visits as 'the most unpleasant and most disturbing detail in the whole prison', and described them as 'a violation of ordinary principles of humanity' . . . ."

. . . . .

"Dr. Menninger's conclusion was that the . . . visiting system amounted to 'dangling a fragment of meat in front of a dog and jerking it away' . . . ."

◼ Since in *Duran* the court of appeals for this circuit held that pretrial detainees may not be subject to any restrictions which are not reasonably related to the state's interest of ensuring the detainee's presence at trial, restrictions on the opportunities of pretrial detainees for contact visitation must be justified by the defendants.

The defendants advance two related arguments in support of their present policy of denying pretrial detainees contact visitation. First, citing the testimony of the chief of security at the Waupun state prison, the defendants contend that contact visitation would seriously jeopardize the security of the Milwaukee county jail.

◼ While recognizing that there may be some validity to the defendants' claim that contact visitation poses a security risk, on balance I believe that such risk may be minimized by carefully screening pretrial detainees and their visitors for contraband. This conclusion is supported in the record by two of the plaintiffs' experts, who testified that contact visitation programs for pretrial detainees do not post a threat to the security of a facility which is not controllable by reasonable security methods. Moreover, the testimony of the chief of security at the Waupun state prison must be contrasted with the fact that the prison, which holds only convicted prisoners, has had a contact visitation program for fourteen years; in that time, there is no record of an escape or of a weapon ever having been passed as a result of the program. Thus, I do not believe that the alleged threat to the security of the Milwaukee county jail, posed by contact visitation, justifies the current blanket prohibition on such visitation. *Miller v. Carson*, 563 F.2d 741, 748 (5th Cir. 1977); *Rhem v. Malcolm*, 371 F.Supp. 594, 626 (S.D.N.Y.), *aff'd*, 507 F.2d 333, 338 (2d Cir. 1974).

The second argument that the defendants use to justify their policy with regard to contact visitation is that such visitation in the Milwaukee county jail would require "unreasonable expenditures" to insure adequate security and provide areas for such visitation.

Pursuant to a previous order of this court, the defendants prepared a report estimating the cost that would be incurred if a program of contact visitation was implemented at the Milwaukee county jail. The report proposed that two areas in the jail could be constructed for contact visitation and that these two areas would accommodate twenty-two contact visits at one time. The cost of such remodeling was estimated to be $254,588. In addition, the defendants estimated that eight additional officers would be required to implement the proposed contact visitation program and that the cost of the salaries for such officers would be $164,232 annually.

In assessing the cost of the defendants' proposed plan, two points should be noted. First, prior to this litigation, the defendants had developed a "master plan" for renovation of the Milwaukee county jail. Part of the construction contemplated under this plan is already funded and underway. If the master plan is completely implemented, the additional cost of remodeling the jail so as to provide areas for contact visitation was estimated by the defendant's architect to be $46,000. Second, although additional officers might be needed to implement a contact visitation program, their services would not be wasted in the hours when they are not working on contact visitation. The chief jailer of the Milwaukee county jail testified that the jail staff is currently five deputies below its allotment by the sheriff's department and thirty deputies below the level necessary to operate the jail adequately.

The cost of contact visitation must be weighed against a substantial restriction which will be imposed on thousands of pretrial detainees, who are incarcerated solely because of their inability to post bond pending trial. The defendants propose to use the Milwaukee county jail as the exclusive place of confinement for pretrial detainees in Milwaukee county for the next twenty years. At present, over four thousand inmates are booked into the jail annually. More than eighty percent of those incarcerated are pretrial detainees. The average stay for such inmates is approximately two weeks, but approximately five percent remain incarcerated for over thirty days.

In light of these factors, I do not believe that the contact visitation program, as proposed by the defendants, requires unreasonable expenditures. *See Miller v. Carson*, 563 F.2d 741, 748–49 (5th Cir. 1977). As the court noted in *Rhem v. Malcolm*, 507 F.2d 333, 342 (2d Cir. 1976):

"The financial woes of the City . . . are obvious to all who live or work here, including federal judges. And on the agenda of City priorities, which includes supply of such essential services as police and fire protection, provision of welfare, care of the ill, collection of garbage, and maintenance of the transit system, it is not surprising that the housing of those confined in jail is not at the top of the list. But pre-trial detainees are people, not outcasts, who are presumed to be innocent of any crime and who have rights guaranteed by the Constitution, as do we all. When a district court is presented with a claim of violation of those rights, its proper function is to decide the case before it, whatever sympathy it may have for those who must manage a great metropolis beset by grievous problems."

Based on the evidence before me, I have determined that a program of contact visitation at the Milwaukee county jail may be implemented without unreasonable expenditures. Since the defendants already have developed a proposal for a contact visitation program, not more than thirty days after the date of this order, they should indicate their intention to proceed with their previously proposed plan as scheduled, or, alternatively serve and file a new proposal which will meet the requirements of this decision and order. The plaintiffs may respond to the defendants' submission within ten days of its filing.

## III. OVERCROWDING

Pretrial detainees at the Milwaukee county jail are confined in multiple occupant cells, holding four persons per cell. These cells measure 9' by 10' and contain two bunk beds, a toilet and sink, and a storage shelf. Each cell block at the jail contains five multiple occupant cells, an inmates' corridor, and a day room. The day rooms contain 335 square feet of space of which 68 square feet are occupied by the cell blocks' one table and shower area. The inmates' corridors measure 8' × 50' and connect the multiple occupant cells to the day rooms. The normal population in each cell block housing pretrial detainees averaged between 18 to 20 persons on various dates during the period from June 1, 1977, to August 7, 1978.

The plaintiffs' overcrowding claim involves two related allegations: first, that pretrial detainees in the Milwaukee county jail are crowded into inadequately sized cells and cell blocks, and second, that the use of multiple occupant cells is a violation of the constitutional rights of the pretrial detainees who occupy those cells.

■ In resolving the plaintiffs' claims as to overcrowding, the court must remain mindful of the general principle that pretrial detainees may not be subject to restrictions beyond those reasonably necessary to ensure institutional security or the detainee's presence at trial. *Duran v. Elrod*, supra; *Smith v. Shimp*, supra.

A number of courts have grappled with the specific question of what amount of space must be afforded to prisoners to meet constitutional requirements. The conclusion of such courts as to what size cell comports with constitutional requirements has varied depending on other conditions within the jail, but several of these courts have concluded that 48–70 square feet of cell space per inmate is the minimal acceptable amount of space. Thus, *Campbell v. McGruder*, 188 U.S.App.D.C. 258, 273–74, 580 F.2d 521, 536–37 (1978), affirmed a district court order requiring that pretrial detainees be held in cells affording each detainee at least 48 square feet of area. In *Gates v. Collier*, 423 F.Supp. 732, 743 (N.D. Miss.1976), the court held that fifty square feet of living space is the minimal amount which must be afforded to meet constitutional requirements. In *Pugh v. Locke*, 406 F.Supp. 318, 322 (M.D.Ala.1976), the court required single occupancy isolation cells of sixty square feet. *Martinez Rodriguez v. Jimenez*, 409 F.Supp. 582, 587 (D.P.R.1976), held that "70 square feet per inmate is the minimum living area appropriate for confinement of each inmate."

The conclusions of these courts is supported by the testimony of the plaintiffs' expert witness, Joe Cannon, who stated at trial that the American Correctional Association's standard for multiple occupant cells is fifty square feet per inmate. Similarly, the National Sheriffs Association Manual on Jail Administration (1970) suggests that in multiple occupant celling 55 square feet of space per occupant is minimal. *Chapman v. Rhodes*, 434 F.Supp. 1007, 1021 (S.D. Ohio 1977).

The record before me indicates that nearly all of the pretrial detainees incarcerated in the Milwaukee county jail are held in groups of four in cells which are ninety square feet in area, which therefore affords each detainee only 22½ square feet of cell space. This is far below the figures which both the courts and experts previously cited have stated as *minimally* acceptable amounts of cell space.

■ In my judgment, whether the space afforded to pretrial detainees in the Milwaukee county jail meets constitutional standards cannot be determined by simply looking at the amount of cell space afforded to pretrial detainees. *See Williams v. Edwards*, 547 F.2d 1206, 1215 (5th Cir. 1977). Other factors such as the amount of space available in common areas, the amount of time detainees must spend in their cells, and the number of detainees held in each cell must also be considered.

In the case at bar, the record indicates that most detainees live in cell blocks with a corridor leading to a day room which contains 335 square feet in area. Since each cell block normally contains twenty inmates, this additional amount of area is not substantial. Indeed, the approximately seventeen square feet of day room space per detainee is about half of the thirty-five square feet recommended by the American Correctional Association as the minimal area per inmate which should be available in a day room apart from cell space.

Moreover, pretrial detainees are not allowed to spend large amounts of time away from their cells or cell blocks. The record indicates that the detainees in the Milwaukee county jail are locked in their cells for eight hours per day. Aside from going to court or to medical facilities, pretrial detainees at the Milwaukee county jail are allowed to be out of their cell block for only two hours per week for recreation and visitation.

Finally, the crowded conditions of confinement for pretrial detainees in the Milwaukee county jail are exacerbated by the fact that the vast majority of such detainees must share their cells with three other inmates. The testimony of Alvin Jordan at trial, as well as the affidavits of other named plaintiffs, indicate that the lack of privacy stemming from multiple occupant cells increases the tension within the jail, resulting in fights and other disturbances. The testimony of the plaintiffs was supported by Joe Cannon, one of the plaintiffs' expert witnesses, who stated that multiple occupant cells not only deprive inmates of privacy but leads to aggressiveness and tension which can cause security problems. The defendants have offered no evidence to refute this testimony.

In *Wolfish v. Levi*, 573 F.2d 118 (2d Cir. 1978), cert. granted ---- U.S. · ----, 99 S.Ct. 76, 58 L.Ed.2d 107 (1978), the court squarely addressed the question of the constitutionality of holding pretrial detainees in multiple occupant cells. In *Wolfish* the facility in question was the Metropolitan Correctional Center, a jail which opened in August, 1975, and "represented the architectural embodiment of the best and most progressive penological planning." Id. at 121. Despite this glowing description of the facility in question, the court of appeals for the second circuit criticized the confinement of two pretrial detainees in a seventy-five square foot cell.

"Indeed, the average room affords two inmates virtually no space for minimal privacy or in which to avoid the other's presence. Inmate testimony in *Detainees* [*of Brooklyn House of Detention for Men v. Malcolm*, 520 F.2d 392 (2d Cir. 1975)] revealed that double-celling had produced numerous disagreements over the choice of activities within the room, and had spawned fights, charges of theft, and frequent involuntary physical contact as the two inmates passed each other in the narrow aisle of walking space.

. . . . .

"Appellants argue that the average room at the MCC is nearly twice as large—75 square feet—as the cells involved in *Detainees*, and that other conditions at MCC are more pleasant. But we find the lack of privacy inherent in double-celling in rooms intended for one individual a far more compelling consideration than a comparison of square footage or the substitution of doors for bars, carpet for concrete, or windows for walls. The government has simply failed to show any substantial justification for double-celling." Id. at 126-27.

█ In the Milwaukee county jail, pretrial detainees are held in groups of four in cells which are only slightly larger than those condemned in *Wolfish* in which only two detainees were held. This factor, in addition to the considerations previously discussed, leads me to conclude that the conditions under which pretrial detainees are held at the Milwaukee county jail do not comport with minimal constitutional requirements. Moreover, I do not believe that any of the arguments advanced by the defendants contradict that conclusion or establish that the overcrowded conditions in the jail are necessary to ensure institutional security or the detainees' presence at trial.

█ The defendants have advanced three arguments in response to the claims of the plaintiffs as to overcrowding. First, the defendants contend that "[w]hether or not single cell occupancy cells are required at the Milwaukee county jail is not an issue that has been raised by the pleadings." This claim is belied by paragraph 24 of the complaint which alleges that:

"[d]ue to overcrowding described herein, the Milwaukee County Jail does not meet the recognized minimum correctional standards contained in Wis.Adm.Code § PW–C 50.01(1), a copy of which is attached hereto as Exhibit A."

Section PW–C 50.01(1) mandates that when jails are built or modernized in the state of Wisconsin they must contain single occupant cells. I believe that the defendants had ample notice that multiple occupant cells would be at issue in this case, and I am not persuaded that they have been prejudiced by any pleading deficiency as to this issue.

■ The defendants' second argument in response to the plaintiffs' claims of overcrowding is that the number of pretrial detainees held in the Milwaukee county jail is consistent with the facility's "design capacity." It is true that design capacity is one factor which may be considered in determining whether or not a facility is overcrowded. *See Wolfish v. Levi*, 573 F.2d 118 (2d Cir. 1978); *M.C.I. Concord Advisory Board v. Hall*, 447 F.Supp. 398 (D.Mass. 1978). However, use consistent with design capacity is only one factor which must be weighed in considering the issue of overcrowding. In this case I do not find that factor compelling. "Those who design prisons are not vested with either the duty or the power to prescribe constitutional standards as to prison space." *Newman v. Alabama*, 559 F.2d 283, 288 (5th Cir. 1977). In the case at bar, I find that because of overcrowding the Milwaukee county jail does not comport with constitutional requirements. The fact that the cells in the facility are "designed" to accommodate four persons, and the cell blocks are "designed" to accommodate twenty persons does not change my conclusion.

The defendants' final argument to challenge the plaintiffs' claims of overcrowding is that the plaintiffs have failed to show that correction of overcrowded conditions would not involve unreasonable expenditures, as allegedly required by *Duran v. Elrod*, supra. In *Duran*, 542 F.2d at 1000, the court stated:

> "Although we emphasize that unlimited communication between detainees and their families and friends is not required, the plaintiffs in this suit must be allowed to present evidence as to whether opportunities for detainees to communicate and receive visitors can be expanded without jeopardizing the security of the institutions or requiring unreasonable expenditures."

The defendants apparently contend that by the preceding language the court of appeals has held that the cost of corrective measures is a controlling issue in determining the constitutionality of prison conditions.

I do not believe that the court of appeals' language can or should be interpreted as the defendants suggest; at least it should not be treated as complete insulation of the present physical arrangement of the jail. If followed to its logical conclusion, the defendants' proposed interpretation would lead to this perverse result: the worse the conditions existing in a facility and the more costly the expenditures required to correct such conditions, the less likely that such conditions could be found unconstitutional.

■ In *Duran*, the court of appeals held that the Constitution requires that pretrial detainees be afforded some level of visitation, consistent with institutional security. However, *Duran* does not require that cost be treated as a major factor in determining whether a constitutional violation exists, but, rather, *Duran* requires that the matter of cost be carefully considered when a court fashions an affirmative remedy for a particular constitutional violation.

Similarly, in the case at bar, the defendants' claim that it would be reasonably expensive to alleviate unconstitutional overcrowding in the Milwaukee county jail is not compelling. In my view, the defendants' reliance on "cost" as a defense is not sufficient to relieve them of their duty to hold pretrial detainees in a facility meeting minimal constitutional requirements. *Campbell v. McGruder*, 188 U.S.App.D.C. 258, 277, 580 F.2d 521, 540 (1978); *Battle v. Anderson*, 564 F.2d 388, 395–96, 400 (10th Cir. 1977); *Detainees of Brooklyn House of Detention for Men v. Malcolm*, 520 F.2d 392, 399 (2d Cir. 1975); *Finney v. Arkansas Board of Correction*, 505 F.2d 194, 201 (8th Cir. 1974); *Gates v. Collier*, 501 F.2d 1291, 1319–20 (5th Cir. 1974); *Rozecki v. Gaughan*, 459 F.2d 6, 8 (1st Cir. 1972).

Having determined that the conditions of confinement for pretrial detainees in the Milwaukee county jail do not comport with constitutional requirements, I now turn to the matter of remedies for such violations.

There is currently in existence a "master plan" to make a number of improvements in the Milwaukee county jail. Among these improvements is the conversion of all multiple occupant cells to single occupant cells. Pursuant to this plan construction of 36 single occupant cells has begun and is currently scheduled for completion in March, 1979. At that point, 180 single occupant cells would be in existence. The master plan calls for the conversion of the remaining cells by 1983, although at present no funds have been appropriated for this second phase of construction.

I am persuaded that the master plan, in its present state of completion and funding, is insufficient to cure the constitutional defects which have been found in this case. Therefore, some further remedial order will be necessary to ensure that pretrial detainees are not incarcerated under the unconstitutional conditions presently in existence at the Milwaukee county jail.

 In order to hold pretrial detainees in a constitutional manner at the Milwaukee county jail, I believe that at a minimum the space afforded to such detainees must be doubled. Therefore, the defendants will be permanently enjoined from holding more than two pretrial detainees in those cells presently being used as four person cells and will further be enjoined from holding more than ten pretrial detainees in those cell blocks currently being used to hold up to twenty detainees. In addition, the defendants will be enjoined from holding any pretrial detainees in any cell affording each such detainee less than forty-five square feet of surface area. In order to allow the defendants to comply with this injunction in an orderly fashion, the order as to overcrowding will not be effective until sixty days following the date of this order.

### IV. CONCLUSION

Therefore, IT IS ORDERED that the plaintiffs' claims as to recreational and training facilities be and hereby are dismissed.

IT IS ALSO ORDERED that the preliminary relief granted to the plaintiffs on January 31, 1978, as to non-contact visitation be and hereby become permanent.

IT IS FURTHER ORDERED that within thirty days of the date of this order the defendants serve and file a report indicating their intention to implement their proposed contact visitation plan as scheduled or propose an alternative plan to meet the terms of this decision. The plaintiffs may serve and file their response to the defendants' report within ten days after being served therewith.

IT IS FURTHER ORDERED that commencing sixty days from the date of this order the defendants be permanently enjoined from holding more than two pretrial detainees in those cells presently being used as four person cells and from holding more than ten pretrial detainees in those cell blocks currently holding up to twenty persons. The defendants are also enjoined from holding any pretrial detainees in any cell affording each such detainee less than forty-five square feet of surface area.