Larry EYLER, Plaintiff,

v.

Robert BABCOX, Willie R. Smith, Ray Lampich, Daniel Colin, J. Pavlakovic, William Newman, Sam McPherson, Frank M. Love, Larry Carmichael, J.L. Bonafeld, M. Jaworski and other unknown Indiana State Police Officers and Ernie's Towing, Defendants.

No. 83 C 7117.

United States District Court,
N.D. Illinois, E.D.

Dec. 19, 1983.

Ditrowsky & Controrer, Chicago, Ill., for plaintiff.

Richard S. Ewing, Stephen Schrumpf, Moshe Jacobius, David Arthur, Asst. Corp. Council, Indianapolis, Ind., and Louis W. Brydges, Brydges, Risenborough, Morris, Franke & Miller, Waukegan, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

The plaintiff in this case is Larry Eyler, a thirty year old Chicago housepainter who is a suspect in a series of possibly related murders. For several months he has been the target of a highly publicized investigation by Illinois and Indiana police authorities, some of whom are defendants in this case. On October 11, 1983, before he had been formally charged with any crime, Eyler filed a complaint in federal court pursuant to 42 U.S.C. § 1983 alleging that the defendants had engaged in numerous unconstitutional activities in violation of his civil rights while conducting their investigation. The allegations in this complaint were later incorporated into plaintiff's amended complaint which is the subject of this decision and is described below. On October 29, 1983 Eyler was arrested by some of the defendants at the federal court building in Chicago where he had appeared at a hearing before Judge Plunkett on his § 1983 action. Eyler was charged with one count of murder. He was taken to the Lake County jail in Waukegan, Illinois,

where he remains, having been unable to post a $1,000,000 bond.

Eyler brings this action against two groups of defendants. The first group consists of J.L. Bonafeld, J. Pavlakovic, M. Jaworski, William Newman, Larry Carmichael, Sam McPherson, and other, unknown, Indiana State Police officers. The second set of defendants includes Robert Babcox, the sheriff of Lake County, Illinois, Willie Smith, his chief deputy, as well as Daniel Colin and Ray Lampich, members of the sheriff's department.

For purposes of considering the motion to dismiss we must take as true plaintiff's allegations and can only dismiss the complaint if plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint contains a variety of allegations which, if true, add up to a serious pattern of misconduct by the defendants. The heart of the complaint is an allegation that the two groups of defendants are conspiring to obtain Eyler's conviction for the killing of numerous persons in Indiana and Illinois. Eyler contends that the defendants have engaged in numerous unconstitutional acts in order to "railroad" him into a conviction. The acts complained of fall roughly into six categories.

### 1. *Improper Investigation*

The alleged conspiracy began at the end of July, 1983. For two and one-half months afterward the defendants followed the plaintiff during his travels in Illinois and Indiana, took his picture without his permission, took note of his friends and associates, and engaged in electronic eavesdropping and wiretapping, all allegedly in violation of his right to privacy. [Complaint, ¶ 6, ¶ 7(A)].

On September 30, 1983 three of the Indiana defendants, Bonafeld, Pavlakovic and Jaworski, detained plaintiff and his vehicle without a warrant. [¶ 7(b)] Eyler was then held incommunicado for five hours and denied access to a phone or a lawyer. He was then subjected to allegedly coercive

questioning by the defendants Love, Newman and McPherson before being released, without being charged, twelve hours after being taken into custody. [¶ 7(c)] The next day the Indiana defendants, without serving a warrant, searched plaintiff's lodgings in Terre Haute and removed personal property without leaving an inventory. [¶ 7(d)]

On October 3, 1983 some of the Lake County defendants seized plaintiff's truck from his Chicago residence and took plaintiff and his landlord, John Dobrovolskis, into custody. They were taken to Waukegan, Illinois, where they were threatened and intimidated. Plaintiff was allegedly coerced into signing a document before he and Dobrovolskis were released and given train fare for the thirty-five mile trip back into the city. Plaintiff was thereafter unable to retrieve his vehicle from defendant Ernie's Towing, which was keeping it at the behest of the Lake County defendants. [¶ 7((e)–(f)]

### 2. *Defamatory and Prejudicial Publicity*

Plaintiff charges that the defendants have repeatedly and intentionally given the news media statements known to be untrue. These allegedly defamatory statements have tended to portray Eyler as a mass murderer and to provide circumstantial evidence purportedly pointing toward Eyler's guilt. [¶ 7(f)] At a press conference on the day of plaintiff's arrest, defendant Babcox allegedly sought to engender community bias against the plaintiff by suggesting that plaintiff meets the FBI's profile of a mass killer and is a latent homosexual—a John Gacy type killer. [¶ 7(g)]

### 3. *Intimidation of Potential Witnesses*

Plaintiff charges that defendants have repeatedly harassed and intimidated his friends and potential witnesses during their investigation, often slandering plaintiff in the process. The defendants contacted all the persons listed in the address book seized from plaintiff's Terre Haute, Indiana lodging during the October 1st search and allegedly harassed and intimidated them, sought to elicit false accusations against the plaintiff, and made defamatory statements about the plaintiff. [¶ 7(h)] One individual allegedly singled out for harassment was Eyler's priest. Defendant Colin has allegedly attempted to eavesdrop on the cleric and his parishioners as well as followed and spied upon them. [¶ 7(i)] Plaintiff's witnesses for an upcoming preliminary hearing were allegedly intimidated by defendants' serving them with grand jury subpoenas. [¶ 7(m)] Finally, the defendants are charged with prompting the Illinois Department of Children and Family Services (DCFS) to remove two foster children from the Dobrovolskis home where plaintiff was living by telling DCFS that a "mass murderer homosexual" was living at the home. [¶ 7(v)]

### 4. *Perjury*

Plaintiff charges that the Lake County defendants perjured themselves in a series of *ex parte* proceedings in Lake County Court. First, the complaint suggests these defendants lied to that court on October 19, 1983 and prompted a decision sealing the criminal file in this case. [¶ 7(t)] Second, on October 29, 1983, defendants used an affidavit containing untrue statements which were perjured to by defendant Smith in order to obtain a search warrant. [¶ 7(j)] The search warrant authorized seizure of samples of plaintiff's blood, head hair, and pubic hair. Third, when Judge Plunkett required plaintiff to be returned after this search, the defendants, through an allegedly false affidavit perjured to by Smith, obtained an arrest warrant, seized the plaintiff, and imprisoned him in the Lake County jail. [Id.] Fourth, defendant Colin is charged with perjuring himself in order to prevent plaintiff's bond from being lowered from $1,000,000. [¶ 7(k)]

### 5. *Prison Conditions and Restrictions on Religious Practices*

Plaintiff alleges that while imprisoned he is being denied his right to practice his

religion. Specifically, he is not allowed to have his rosary and religious materials, is denied a chance to attend religious services, and is not permitted to receive the sacraments from his priest. [¶ 7(*l*), (n), (u)] Plaintiff further complains that he was kept in virtual solitary confinement, a situation since rectified. [¶ 7(o)] In his most recent filing plaintiff alleges that he is being denied clean clothing and that his visitation rights with his family are being unlawfully restricted. [Pltf.'s Emer.Pet. (12/12/83)]

### 6. Dress

Finally, plaintiff alleges that the Lake County defendants forced him to appear at his bail hearing and preliminary hearing in jail issue clothes and have refused to permit plaintiff to wear his three-piece business suit during pretrial court appearances. Defendants are also accused of encouraging the media to widely disseminate pictures of defendant in prison garb. These things were allegedly done to prejudice the community against Eyler and to further advertise defendants' assertions that Eyler is a mass murderer. [¶ 7(q), (r)]

Plaintiff alleges that as a result of defendants' actions he has lost his job, his ability to earn a living, his good name and reputation, his liberty, and his right to practice his religion. He seeks the issuance of a preliminary injunction prohibiting the defendants from further violations of his civil rights and at least $100,000,000 in damages. At this point the court considers only plaintiff's request for a preliminary injunction.

### II.

The abstention doctrine as outlined in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny precludes this court from granting injunctive relief for most of the civil rights violations which plaintiff has alleged. *Younger* articulated a "fundamental policy against federal interference with state criminal proceedings." *Id.* at 46, 91 S.Ct. at 751. This policy rests upon both the tenet of equity jurisprudence that injunctive relief is only appropriate where there is no legal remedy and the moving party faces irreparable harm and the powerful but amorphous notion of comity. *Id.* at 43–44, 91 S.Ct. at 750–751. The *Younger* abstention principles have been reaffirmed and extended in subsequent Supreme Court decisions. *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979).

■ This policy of federal restraint is "founded on the premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Kugler v. Helfant*, 421 U.S. 117, 124, 95 S.Ct. 1524, 1530, 44 L.Ed.2d 15 (1975). Abstention, however, is inappropriate in those "extraordinary circumstances" which render the state court incapable of fairly and fully adjudicating the constitutional issues before it. Such circumstances do not lend themselves to easy definition.

The very nature of 'extraordinary circumstances,' of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state criminal proceedings. But whatever else is required, such circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation.

*Id.* at 124–125, 95 S.Ct. at 1530–1531.

■ The real and emotional costs of having to defend against a single criminal

prosecution are not enough by themselves to justify an exception to the abstention doctrine. *Younger, supra,* 401 U.S. at 46, 91 S.Ct. at 751. The Supreme Court has, however, identified "cases of proven harassment or prosecutions undertaken in bad faith without hope of obtaining a valid conviction ..." as proper bases for federal equitable intervention in state criminal proceedings. *Perez v. Ledesma,* 401 U.S. 82, 85, 91 S.Ct. 674, 676, 27 L.Ed.2d 701 (1971).

■ All of Eyler's allegations concerning the improper investigative techniques allegedly used by the defendants fall within the ambit of the abstention doctrine. The constitutional issues raised by these allegations can and should be addressed by the state trial court, presumably on motions to suppress or for protective orders, and at least one such order has already been entered. Other means also exist to obviate systematic attempts to prejudice the community against plaintiff. The right to trial before an impartial jury, by its very nature, can only be secured or denied in the context of a criminal trial. Plaintiff can vigorously employ voir dire and move for a change of venue in order to vindicate his right to a fair trial. *See Kaylor v. Fields,* 661 F.2d 1177 (8th Cir.1981). Plaintiff's use of 42 U.S.C. § 1983 to request an injunction prohibiting the defendants from making defamatory statements suffers from serious legal, *see Paul v. Davis,* 421 U.S. 909, 95 S.Ct. 1556, 43 L.Ed.2d 773 (1975), and practical difficulties. These problems need not be addressed, however, because defendants are subject to a protective order regarding discovery issued by the state court on November 17, 1983 which prohibits state officials from "discussing or disclosing in any manner materials supplie[d] or received pursuant to discovery" to members of the public. In order to protect himself against further misstatements by the defendants, plaintiff can seek enforcement of this protective order by the state court. Plaintiff can counter the prejudicial effects of any intimidation of Eyler's friends and potential witnesses by the defendants through a motion in state court for a mistrial, effective cross-examination, and even elicitation of direct testimony outlining the nature and degree of such intimidation. The state court is also well equipped to handle plaintiff's allegations that the defendants perjured themselves on numerous occasions. It is capable as well of addressing plaintiff's claim that he is being prejudiced by being forced to make court appearances in prison garb.

■ The "extraordinary circumstances" exception to the abstention doctrine, outlined above, is not applicable here. Plaintiff's allegations contain little of substance suggesting that the state's murder prosecution is being brought in bad faith or primarily for harassment purposes. Eyler's allegations are directed primarily at the investigative techniques used by the defendants. Certainly, unlawful behavior by law enforcement officials may suggest that a plaintiff faces the threat of "great, immediate, and irreparable injury," *Kugler v. Helfant,* 421 U.S. 117, 124, 95 S.Ct. 1524, 1530, 44 L.Ed.2d 15 (1975), sufficient to justify federal court intervention in a state criminal proceeding. Plaintiff's allegations of such behavior by defendants are outweighed here by the continued pendency of the murder charge against him coupled with his failure to challenge the presumption that the state court can deal fully and fairly with the constitutional issues he raises. In sum, abstention is appropriate with respect to all of Eyler's allegations except those involving prison conditions and restrictions.

### III.

■ Eyler's allegations relating to the conditions of his imprisonment at the Lake County jail and the restrictions placed on his religious practices by the defendants do not directly involve a pending criminal proceeding and thus this court need not abstain from considering the issues raised by the allegations. Pretrial detainees, like prisoners, retain constitutional rights which are enforceable by the federal courts. *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). These rights may

986

be restricted, however, in order to achieve certain institutional goals such as the maintenance of jail security. *Bell v. Wolfish*, 441 U.S. 520, 540, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979). While federal courts must vigorously protect the constitutional rights of pretrial detainees, they should also give substantial deference to the judgment of state officials, who are most familiar with the problems of prison administration. *Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974).

■ A pretrial detainee like the plaintiff has not been adjudged guilty and may not be subjected to conditions and restrictions which amount to punishment or violate some other constitutional provision. *Bell, supra,* 441 U.S. at 536–37, 99 S.Ct. at 1872–73; *Lock v. Jenkins*, 641 F.2d 488 (7th Cir.1981). Eyler's primary complaint about his prison conditions is that defendants have denied him clean clothing for over three weeks. This allegation, if true, may represent the arbitrary imposition of a condition on the plaintiff which is not reasonably related to legitimate institutional goals and thus constitutes punishment. *Id.* 441 U.S. at 539, 99 S.Ct. at 1874. *See also, Dawson v. Kendrick*, 527 F.Supp. 1252, 1288–89 (S.D.W.Va.1981) (collecting cases). Pretrial detainees also enjoy the constitutional right of freedom of religion, *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972), subject to restrictions based on valid institutional objectives. Eyler claims that his right was infringed upon because he was denied use of his rosary. He also alleges that he has been denied the right to worship, receive sacraments from his priest, and to obtain religious materials. Finally, pretrial detainees retain a limited first amendment right of freedom of association. Plaintiff charges that the defendants arbitrarily denied him his full fifteen-minute weekly allotment of time to visit his family. While prison officials have some discretion in setting visitation policies, arbitrary denial of an individual plaintiff's visitation rights states a claim. *Duran v. Elrod*, 542 F.2d 998, 1000 (7th Cir.1976); *McMurry v. Phelps*, 533 F.Supp. 742, 763–765 (W.D.La.1982).

■ Issuance of a preliminary injunction as to the lack of clean clothing and restrictions on visitation rights is unwarranted for three reasons. First, these allegations are neither contained in a verified pleading nor supported by affidavit. As presented to the court by plaintiff's attorney, these allegations are no more than hearsay and therefore wholly insufficient to support the issuance of a preliminary injunction. *See* 11 Wright & Miller, Federal Practice & Procedure § 2949, pgs. 469–73. Second, pending before this court is *Kissane v. Brown*, 80 C 1727, an inmate class action challenge to the conditions at the Lake County Jail. Absent some indication that the conditions faced by plaintiff are singularly severe, his interest in constitutional jail conditions is adequately protected by the *Kissane* action. Third, there is no indication that plaintiff has ever complained to the defendants about the jail conditions. This court will not order changes in the defendants' treatment of the plaintiff without some showing that he has pursued institutional remedies or that such a pursuit would be futile.

■ Plaintiff's allegation of unconstitutional restrictions on his religious activities is contained in a verified complaint and is appropriately considered by this court. As with the other claims, the defendants have failed to provide affidavits or similar materials in opposition even though "[e]vidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to ... oppose a motion for a preliminary injunction." Wright & Miller, *supra.,* at 469. Nevertheless, issuance of a preliminary injunction at this time is inappropriate. First, there is no indication that plaintiff has ever complained to the defendants. Second, in order to be awarded preliminary injunctive relief, a plaintiff "must establish a reasonable probability of success on the merits, irreparable injury, the lack of serious adverse effects on others, and sufficient public interest." *Kolz v. Board of Education*, 576 F.2d 747, 748 (7th Cir.1978). Unsworn representations cast considerable doubt upon plaintiff's probability of success. The motion to dismiss

these claims having been denied, defendants should have the opportunity to respond in proper fashion to the petition for injunctive relief. Defendants are directed to file any opposing materials within 14 days.

### Conclusion

This opinion has addressed only plaintiff's request for a preliminary injunction and has no bearing on his damage claims. Action on the damage claims will be stayed until the conclusion of state criminal proceedings.

Abstention is appropriate with regard to most of plaintiff's claims. Plaintiff's request for a preliminary injunction on all other claims is denied at this time, without prejudice to its renewal.