**Nathaniel Allen LINDELL, Loren W. Pate and Herbert Genz, Plaintiffs,**

v.

**Jon E. LITSCHER, George Daley, Sharon Zunker, Gary R. McCaughtry, Gerald Berge, Kyle K. Davidson, Peter Huibregste, Cindy O'Donnell, John Ray, Sandy Hautamaki, Beth Dittmann, Unknown Members of the Program Review Committee, Dr. Robert Wheeler, Marc Clements, Cathy Jess, Curt Jenssen, Dr. Stephen Fleck, George Kaemerer, Don Beerbaum, Lynn Oestreich, Deb Tetzlaff, Jodine Deppisch, Captain Eckstein, Cpt. Steve Scheuler, Sgt. Kroll, Cpt. Reed Richardson, C.O.II Heinz, Cpt. Dwayne Strahota, Cpt. S. Houser, Captain Wade, Goofy # 1, Cpt. Proffit, Cpt. Core, Cpt. Muranski, Lt. Chuck**

Pearce, Linda Alsum–O'Donovan, James Muenchow, Ellen Ray, Ms. Ray, Tom "Doe", Sgt. Janzen, Sgt. Burns, Sgt. Hottenstein, C.O. Lomen, C.O. Esser, C.O. S. Grondin, C.O Schwantz, C.O. Christian, C.O. II Mike Glamann, C.O. II Mierzejewski, J.C. Smits, C.O. II Miller, Lt. Thomas, Dave Travis, William Schultz, Laura Wood, Unidentifiable Persons, Pam Bartels, 3 Unidentifiable Persons, Goofy # 3, Dr. Campbell, Katrina Hanson, C.O. Ostrander, Nurses Renae, Ken, Ruth, Dr. Hasslehoff, Sgt. Bakken, Jim Wegner, C.O. II Friday, C.O. Shannon, Sgt. O'Rourke, Dr. Apple, Ms. Cullen, Dr. Twila Hagen, Mr. Overbo, Mr. North, Mr. Francis, Defendants.

**Loren W. Pate, Edward M. Singleton, and Nathaniel Allen Lindell, Petitioners,**

v.

**Jon E. Litscher, Secretary of D.O.C., et al., Respondents.**

No. 02–C–79–C.

United States District Court, W.D. Wisconsin.

July 15, 2002.

Nathaniel Lindell, Winnebago, WI, Pro Se.

Herbert D. Genz, Supermax Correctional Institution, Boscobel, WI, for Genz, Herbert Douglas.

Charles D. Hoornstra, Assistant Attorney General, Madison, WI, for Defendants Litscher, Jon E.

## ORDER

CRABB, District Judge.

Nathaniel Lindell is an active litigant in this court. In three months, he submitted three separate lawsuits with hundreds of pages of material and dozens of claims. These submissions raise significant questions about the wisdom of allowing inmate plaintiffs to file multi-plaintiff complaints challenging prison conditions and practices. I conclude that as a general rule such cases are unmanageable for the parties and for the court and should not be permitted to proceed.

In *Lindell v. Litscher*, 02–C–21–C, Lindell submitted an 85–page proposed complaint with exhibits. He named himself, inmate Jimmy Bridges and "all others similarly situated" as petitioners. He identified 18 respondents, all of whom were alleged to be employees of the Wisconsin

Department of Corrections. The complaint was accompanied by a request from Lindell that the court make a copy of the complaint and send it to him so that he could prepare a memorandum of law in support of his case.

In an order entered in that case on January 17, 2002, Magistrate Judge Crocker noted that Lindell's admission that he did not have a copy of the complaint in his possession raised a serious question whether Lindell and Bridges were in a position to prosecute the case independently. The magistrate judge noted in particular that Lindell had no authority to represent other persons in a lawsuit who are also proceeding pro se. He ordered that if, by February 7, 2002, both petitioners had not written the court to confirm that each had a copy of the complaint, the case would be dismissed without prejudice to their refiling their claims on another date. In addition, the magistrate judge assessed each petitioner an initial partial payment of the $150 fee for filing their complaint, in the event the petitioners complied with the copy requirement.

On February 6, 2002, Lindell and Bridges filed a motion for reconsideration of the magistrate judge's order. In the motion, Lindell and Bridges advised the court that they were indigent and that prison officials would not allow them to use funds from their release accounts to pay for photocopies. Bridges asked the court to waive the initial partial payment of the filing fee he had been assessed. Lindell again requested that the court bear the cost of photocopying the complaint for petitioners. At about the same time, the court received a check in the amount of $29.34 issued from Lindell's prison account. The court allocated the money to debts Lindell owed in other cases he had filed in this court earlier and then applied an amount sufficient to cover Jimmy Bridges' initial partial payment to the balance owed in case no. 02–C–21–C.

Subsequently, Lindell wrote again, this time requesting that his claims be severed from Bridges's. According to Lindell, it was "unduly burdensome" to serve Bridges with copies of documents in light of the fact that there was "no common factor between their claims." On March 4, 2002, Lindell filed a 27–page "amended complaint" with 41 pages of exhibits raising 21 causes of action relating to himself only. He omitted all references to Jimmy Bridges and deleted Bridges's name from the caption.

On April 4, 2002, this court granted Lindell's motion to sever. The court dismissed Bridges from the case without prejudice to Bridges's filing his own separate lawsuit at a later date.

It took nearly three months for the court to sort through Lindell's claims in case no. 02–C–21–C. The process was unusually difficult because Lindell chose to amend his pleading and change parties after filing his original complaint and because he did not organize his claims of constitutional wrongdoing into categories relating to similar sets of facts or limit his factual allegations to "short and plain statement[s] of his claims" as required by Fed.R.Civ.P. 8. He omitted crucial facts relating to some claims, choosing instead to refer the court to one or more exhibits attached to the complaint that he "incorporate[d] by reference as though fully set forth herein." On May 28, 2002, I ruled on Lindell's request for leave to proceed *in forma pauperis* on his claims in case no. 02–C–21–C, granting him leave to proceed on six claims, staying a decision with respect to one claim and denying all the remaining claims for lack of legal merit.

Meanwhile, on February 7, 2002, shortly after petitioner Lindell had filed case no. 02–C–21–C, he filed *Lindell v. Litscher,*

02–C–79–C. In the original complaint, he named as petitioners Nathaniel Allen Lindell, Loren W. Pate and Herbert Genz "and all others similarly situated." There are 73 identified respondents and several "unidentified" or "Doe" respondents. The complaint is 185 pages long with 548 numbered paragraphs, 64 causes of action and 301 exhibits. In a cover letter accompanying the complaint, Lindell writes, "I will be litigating this case for my co-plaintiffs."

On February 10, 2002, Lindell submitted seven additional exhibits to be attached to his complaint. In a cover letter he wrote,

My co-plaintiffs and I are having difficulty communicating, but we wish to each proceed on this action. Mr. Genz will be shortly sending you the final dismissal of his complaint regarding his claims. Again, we all wish to proceed, but are having communication problems due to the policies at Supermax.

One week later, on February 17, 2002, Lindell submitted several more exhibits to be attached to the complaint. In his cover letter he wrote,

You may disregard the claims of my would be co-plaintiffs in the above-noted case; I have been informed by them that they do not wish to file at this time. Also, I do have a copy of the pleadings and exhibits in this matter, so rest your weary head. Anyhow, I'm enclosing copies of ICRS documents to reveal that I've exhausted the ICRS. The exhibits numbers are just for identification purposes, to facilitate me/you filing/processing an amended complaint.

On February 28, 2002, Lindell submitted more exhibits, asking that they be included with his lawsuit. He adds to his letter,

Also, please advise the judge that I will be proceeding with Herb Genz as a co-plaintiff, and he should be sending her his trust account statement and exhibits showing exhaustion. As my communication is broken, I can only assume Loren

Pate does not wish to proceed if he hasn't sent in his account statements. So, I ask Crabb consider Herb Genz's and my claims and give us a case # . Also let her know I'm drafting the amended complaint and for now to consider the one she has.

By this time, petitioners' complaint in 02–C–79–C totaled 835 pages. With each submission, petitioner Lindell advised the court that he had given a copy to his co-petitioners, despite the fact that his trust fund account statement showed that he was on legal loan status at the prison at that time and did not show disbursements under the legal loan category of funds sufficient to cover the cost of three copies of a complaint of this size and despite the fact he was advising the court at various times that he believed his co-plaintiffs to be out of the case.

Also on February 28, 2002, Herbert Genz submitted more exhibits to be attached to the complaint. In his cover letter, he wrote,

I wish to inform you that I would still like to proceed on my claims for the above named suit. I have a copy of the suit, the whole thing pertains to me, and I want to be part of the suit. I have discussed this with Mr. Nate Lindell and he agrees with me that I should still be included in the suit.

Genz did not say that he had sent a copy of his letter and exhibits to any co-plaintiff.

On March 1, 2002, Lindell wrote again. In his letter, he stated,

Also, I'm finally starting my amended complaint for *Lindell, Pate, Genz v. Litscher, et al.,* hope to get you the thing in 2 weeks latest. Genz said he wants on and should have sent you his trust account and ICRS papers by now; Pate is up in the air for some odd reason. Please contact Pate and Genz and advise them of what they need to do to pro-

ceed, as my mail is not arriving to them (apparently)—I'd like you to process my claims if they aren't willing to proceed.

Lindell did not indicate that he had mailed a copy of this letter to Pate and Genz.

On March 3, 2002, Loren Pate wrote a letter to the court in which he stated,

I am submitting this legal breve to inform you that I do not wish to participate in the above-entitled case which is why I have not mailed you a copy of my trust account statement. I am requesting that my claims be dismissed without prejudice in accordance with Rule 41(a), Fed.R.Civ.P., so that Mr. Lindell and Mr. Genz can proceed with their suit.

Pate shows that he sent a copy of this letter to Lindell but did not show that he had sent a copy to Genz.

On March 26, 2002, true to his word, Lindell filed an amended complaint. Although Loren Pate's name had been written into the caption, it was crossed off, leaving as the petitioners only Nathanial Lindell and Herbert Genz, both of whom signed the complaint. The complaint names 82 defendants, not counting "unidentified" and "Jane Doe" defendants, is 101 pages long, contains 211 numbered paragraphs of alleged wrongdoing and lists 51 causes of action, many of which refer the court for crucial factual information to hundreds of pages of exhibits. Only one of the 211 paragraphs in the complaint sets out a claim relating to Herbert Genz (¶ 135). In a cover letter dated March 26, 2002, accompanying the amended complaint, Lindell states, "Enclosed is our 101 pg. suit [and] the Exhibits for our suit (any Exhibits cited and not enclosed are to be found amongst those I already sent you)." In another letter dated March 31, 2002, Lindell describes the changes he made in the amended complaint as follows: "We decided to drop some defendants, add some, shorten the pleadings and add some claims, subtract some claims." He contin-

ues, "F.Y.I., Loren Pate will be suing over our Wotanist claims in a spell; he's opted to file separately for his own reasons. I expect you'll want to join our claims, so I tell you." Lindell shows that he sent a copy of this letter to Genz.

Less than a week later, on April 6, 2002, Lindell filed a "Motion for a Protective Order," in which he complained that prison staff were not allowing him to use "recycled" paper, that is, paper with writing already on one side, so that he could make copies of his submissions for his co-petitioner, Herbert Genz. He complained also that he had been moved from one unit to another and had not yet been given his own legal papers and that Genz was on cell confinement and could not use the law computer or books. Apparently in an effort to move this court promptly to intervene on his and Genz's behalf, Lindell warned,

You will be getting *another very large* multiplaintiff suit in your lap *again* if this problem is not for once and all immediately resolved.

\*    \* .    \*    \*    \*    \*

... I request you send me copies [of everything submitted to the court], as you have the only ones I know of (Herb Genz can't send me any copies, per the policies here). (Emphasis in original.)

\*    \*    \*    \*    \*    \*

By my above signature, I certify I sent a copy of this document and the attached Motion and Proposed order to A.A.G. Hoornstra at his address of record. For the above-noted reasons, I'm unable to send Herb Genz a copy of the above.

On April 10, 2002, petitioner Lindell sent the court a 30–page brief in support of his and Genz's complaint. He certified that he sent a copy of the brief to Genz through the prison's "legal route." Also in April, in

response to an order dated March 29, 2002, Lindell and Genz paid initial partial payments of the filing fee in case no. 02–C–79–C.

On April 29, 2002, petitioner Lindell filed a third complaint. The complaint lists three proposed petitioners, Loren Pate, Edward Singleton and Nathaniel Lindell, but only Lindell has signed the complaint. Next to the lines designated for Pate's and Singleton's signatures at the end of the complaint, Lindell has written "Mr. Pate gave me authorization to sign for him. N.L" and "Mr. Singleton gave me authorization to sign for him. N.L." Before this complaint was filed, in a letter dated April 14, 2002, Edward Singleton wrote to say that he had given Lindell "permission to sign [his] name on anything pertaining to case 02–C–79–C." This is curious, since Singleton is not a named petitioner in case no. 02–C–79–C, although on April 8, 2002, he submitted a letter asking to be added to that case "as a plaintiff and witness." I presume Singleton intended his carte blanche permission for Nathaniel Lindell to represent him in case no. 02–C–79–C to extend to the third proposed action, which has not been assigned a case number.

In his third proposed action, Lindell again makes multiple claims of constitutional wrongdoing. Most of the claims, however, relate specifically to petitioners Pate and Singleton. Only a few claims relate specifically to Lindell. The majority of claims that do relate to Lindell recount the same kind of day-to-day challenges to prison rules and regulations that Lindell raised in case no. 02–C–21–C. For example, Lindell complains about denial of personal property items, such as his inability to obtain envelopes and paper from sources other than the prison canteen, interference with his ability to practice his religion, interference with his ability to obtain meaningful access to the courts and

retaliation for exercising his right of access to the courts.

There is only one claim relating to Lindell in the third action that appears to be new. Under a caption on page 20 of the complaint titled "Ongoing Discrimination and Retaliation," Lindell refers to an alleged illegal cell extraction. However, as to this claim, Lindell simply refers the court to an inmate complaint and a notice of claim attached as exhibits to the complaint from which Lindell apparently expects the court to determine the factual allegations concerning a cell extraction on April 8, 2002, as well as factual allegations about a number of other complaints Lindell has about his prison conditions that overlap with claims he raised in case nos. 02–C–79–C and 02–C–21–C.

In a cover letter accompanying the third proposed complaint, Lindell states,

> Enclosed please find ... a copy of our joint claims new suit (36 pages) which my co-plaintiffs weren't allowed to sign ... and documentation showing exhaustion of admin. remedies (you already have copies of Loren Pate's administrative remedies as part of the initial complaint for case # 02–C–79–C so please look there for Pate's exhaustion of remedies papers). My co-plaintiffs (i.e. Loren Pate, Edward Singleton) will shortly send you the I.F.P. papers, and verify they authorized me to sign the suit for them (Mr. Singleton wrote this court on 4–14–02, and Mr. Pate also wrote to this court on ? saying I could sign for them).

On May 6, 2002, Edward Singleton filed a trust fund account statement and a request to proceed *in forma pauperis* in "the lawsuit from my co-plaintiff Nate Lindell which my name appears on the suit." He does not show that he sent a copy of his submission to his co-plaintiffs.

On May 13, 2002, Loren Pate wrote the court, stating that Lindell "should (if) he

hasn't already, be filing a civil complaint (34) pages," and asking that the court include with the pleading documents he enclosed with his letter: a request for leave to proceed *in forma pauperis;* a trust fund account statement; and a signature page to a pleading containing only Pate's signature. This signature page is not an exact duplicate of the signature page attached to Lindell's proposed complaint. Pate does not indicate that he has sent copies of this submission to his co-petitioners.

On May 19, 2002, petitioner Genz wrote the court to request that he be allowed to voluntarily dismiss his claims from case no. 02–C–79–C, "due to circumstances beyond [his] control." He asks that his "name be treated as if it never appeared in any complaint's caption and any reference to [him] in the body of complaint(s) be ignored." Genz showed that he had sent a copy of this letter to Lindell, which is verified by the fact that Lindell promptly filed a letter dated May 23, 2002, in which he asked the court to disregard Genz's request to be voluntarily dismissed and advised the court that he (Lindell) has been transferred to the Wisconsin Resource Center in Winnebago, Wisconsin.

Finally, on June 25, 2002, Edward Singleton submitted "a copy of Exhibit 438," together with a cover letter in which he states, "I wasn't sure if I sent this before now, so I'm doing it at this time." There is no indication that Singleton served these documents on any co-plaintiff.

## DISCUSSION

These cases highlight the multitude of problems that can arise in cases brought by more than one prisoner petitioner proceeding pro se. The problems are more severe in these cases than in most other cases but they are by no means unique. I conclude from my experiences with Lindell's lawsuits and with two other lawsuits filed in the recent past by another prisoner on behalf of more than 70 pro se prisoners that it is no kindness to inmate litigants to allow them to bring multi-plaintiff lawsuits. The practical difficulties of managing such cases are burdensome for the court and for defendants; they are insurmountable for plaintiffs. Henceforth I will require prisoner litigants to file their own separate lawsuits for the following reasons.

First, there is no guarantee that prisoners who bring joint lawsuits will remain in contact with each other for the length of time it takes a lawsuit to reach resolution. Prisoners are subject to transfer from one institution to another. They are moved within an institution from one cell block to another and to administrative and punitive segregation status. They have limited freedom, if any, to meet with co-petitioners to discuss strategy for a combined lawsuit or to draft documents jointly for filing in a case. As petitioner Lindell readily admits, he is frequently out of contact with his co-petitioners. Indeed, he has notified the court that he had been moved to another facility entirely, leaving him in no position to consult personally with co-petitioners in a joint lawsuit.

Second, all too often one inmate takes charge of the multi-plaintiff lawsuit and obtains the agreement of other inmates to act on their behalf in prosecuting the joint lawsuit although he lacks the legal authority to do so. For example, in these cases, despite the fact that Magistrate Judge Stephen Crocker told Nathaniel Lindell explicitly in case no. 02–C–21–C that he was not allowed to represent other persons in a lawsuit, Lindell disregarded this admonition. When Lindell filed his third complaint and added inmates Pate and Singleton as co-petitioners, he advised the court that he had authority from Pate and Singleton to prosecute a lawsuit on their behalf. In case no. 02–C–79–C, Lindell first

directed the court to "disregard the claims" of his co-petitioners, then later notified the court that petitioner Genz should be added back to the lawsuit, and even later, when Genz asked the court to allow him to dismiss his claims voluntarily, Lindell directed the court to disregard Genz's request. These communications suggest that Lindell is ignoring the court's admonition that he lacks the authority to act on behalf of his co-petitioners. His actions reveal his erroneous belief that he can raise claims related to other inmates or delete their claims from his lawsuits at will. Lindell's attempt to exercise control over the joint litigation mirrors the attempts of other pro se litigants to do the same. Such attempts are understandable, given the difficulties of communication among prisoner litigants, but they raise serious questions about how much information the co-petitioners have and whether they agree with the strategic decisions being made.

Fed.R.Civ.P. 11 requires any person who files a lawsuit to certify by his signature that to the best of the signer's knowledge, information and belief formed after reasonable inquiry, the allegations of the complaint are well grounded in fact and the lawsuit is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law and that the filing of the complaint is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needlessly increase the cost of litigation. In the third proposed lawsuit Lindell filed, neither Pate nor Singleton made such a certification. With Lindell's depleted bank account, he could not have paid for copies of the complaint and attachments. Thus, there is no reason to believe that either Pate or Singleton has a copy of the complaint in his possession, knows precisely what claims are being raised or is in any position to prosecute his own claims independently. The willingness of inmates Singleton and Pate to give Lindell authority to act on their behalf suggests strongly that Singleton and Pate are not prepared to litigate their own claims as they must be if they wish to prosecute a lawsuit in this court.

Third, combining the claims of multiple prisoner litigants proceeding pro se needlessly increases the cost of litigation for the parties and the court. Fed.R.Civ.P. 5 requires each party to a lawsuit to serve on every other party to the lawsuit each pleading, motion, or other paper filed with the court. The court is required to send its orders and letters to every party or to counsel, where the parties are represented by counsel. The cost to prisoner pro se litigants of managing a multi-plaintiff suit quickly outpaces their ability to pay the costs. Prisoners earn meager wages, if they earn wages at all. The cost of photocopying documents alone is often prohibitive. In case no. 02–C–79–C, the amended pleading grew to more than 800 pages before the court could even begin to sort through the claims. A large portion of the amended complaint consisted of documents related to exhaustion of administrative remedies. Petitioner Lindell's trust fund account statement does not show disbursements large enough to cover the cost of photocopying this vast volume of material for himself and his co-petitioners. Thus, it appears that Lindell may not be truthful when he says he is serving his co-petitioners with copies of all documents he files with the court.

Fourth, for the pro se litigant who lets another inmate prosecute a joint action on his behalf, there is significant potential for adverse consequences. Under the 1996 Prison Litigation Reform Act, prisoners who file claims that lack legal merit or who sue defendants who are immune from suit are subject to the three-strike provision in 28 U.S.C. § 1915. In some instances,

courts impose other sanctions as well on persons who bring lawsuits that lack merit. A pro se litigant who lets another inmate file a joint complaint for him may find himself denied the opportunity to file suits without prior payment of the full filing fee or subjected to monetary sanctions.

In any event, to the extent that a prisoner pro se litigant challenges an alleged unconstitutional prison policy or condition of confinement and seeks injunctive relief, he does not increase his chances for success or obtain greater benefit by persuading other prisoners to join with him to litigate the claim. A prisoner may ask that his action be certified as a class action. If there is merit to the request, the court will grant it and appoint counsel to represent the class. Even if a class action is not appropriate, one pro se litigant can produce benefits for other prisoners if he obtains a declaration from the court that a prison policy or condition of confinement is unconstitutional. Once such a declaration is made as to one inmate, it will apply to all similarly situated inmates.

To the extent that a pro se prisoner litigant wishes to recover money damages for alleged unconstitutional practices or conditions, it does not help him to file his suit along with other prisoners. Each prisoner litigant claiming damages is required to prove his own damages independently. Joint filings concerning individual claims of injury only raise the costs of litigating the case and needlessly complicate its management.

Accordingly, I will dismiss both of these cases without prejudice to petitioners' filing their own separate lawsuits. If Lindell files a new lawsuit, he should be aware that I will not search his attachments to the complaint for facts relating to his claims. He must set out the allegations supporting or explaining his claims.

Moreover, he is not to raise in a new lawsuit any claim he raised previously in *Lindell v. Litscher*, 02–C–21–C, whether the claim is one that was dismissed or one on which he was allowed to proceed. He should describe his claims in *short* and *plain* statements, saying no more than is necessary to explain what happened, where it happened, when it happened, who did it, and what he wants the court to do about it.

Because I am requiring petitioners to file their lawsuits separately, I am returning to each petitioner the exhibits they submitted to the court relating to their attempts to exhaust administrative remedies. In addition, I am requesting the clerk of court to refund to petitioners Lindell and Genz the initial partial payments of $4.89 and $3.33 they made in case no. 02–C–79–C.

## ORDER

IT IS ORDERED that these cases are DISMISSED without prejudice to each petitioner's filing his own separate lawsuit. The clerk of court is directed to close these files and to refund to petitioner Nathaniel Allen Lindell $4.89 and to petitioner Herbert Genz $3.33, which amounts were paid to the court as initial partial payments of the filing fee in case no. 02–C–79–C.