**Kurtis L. KING, Plaintiff,**

v.

**Matthew FRANK in his official capacity; Gary R. McCaughtry, in his official and individual capacities; Curtis Janssen, in his official and individual capacities; Steven Schueler, in his official and individual capacities; Does 1–100, Health and Segregation Complex staff, and both security and clinical services staff in their official and individual capacities, Defendants.**

No. 04–C–338–C.

United States District Court,
W.D. Wisconsin.

July 27, 2004.

stant illumination of his cell, excessive noise, lack of outdoor recreation and extreme cell temperatures.

Although plaintiff has paid the filing fee in full, because he is a prisoner, his complaint must be screened pursuant to 28 U.S.C. § 1915A. In addressing any pro se litigant's complaint, the court must construe the complaint liberally. *See Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, if the litigant is a prisoner, the 1996 Prison Litigation Reform Act requires the court to deny leave to proceed if the prisoner's complaint is legally frivolous, malicious, fails to state a claim upon which relief may be granted or seeks money damages from a defendant who is immune from such relief.

I conclude that plaintiff has stated a claim upon which relief may be granted with respect to his claims that defendants violated his constitutional rights by restricting his telephone usage, publications and visitation privileges, keeping his cell illuminated 24 hours a day and failing to provide him with adequate mental health care. Plaintiff's remaining claims will be dismissed for the reasons discussed below.

In his complaint, plaintiff alleges the following facts. (I note that plaintiff originally filed his complaint with another inmate, Jason Jones. However, I dismissed Jones because it is this court's policy not to accept group complaints from prisoners proceeding pro se. June 9 Order, dkt. # 2 (citing *Lindell v. Litscher,* 212 F.Supp.2d 936 (W.D.Wis.2002)). Therefore, in setting forth the allegations of fact, I have disregarded all the allegations that relate only to Jones.)

## ORDER

CRABB, District Judge.

This is a proposed civil action for monetary, declaratory and injunctive relief, brought pursuant to 42 U.S.C. § 1983. Plaintiff Kurtis King is an inmate at the Waupun Correctional Institution in Waupun, Wisconsin. He challenges numerous conditions of his confinement, including the lack of mental health care, visitation restrictions, restrictions on property, con-

## ALLEGATIONS OF FACT

Plaintiff Kurtis King is an inmate at the Waupun Correctional Institution in Waupun, Wisconsin. He has been incarcerated

there since May 20, 2003, when he was transferred from the Wisconsin Secure Program Facility because he is seriously mentally ill. Currently, he is housed in Waupun's health and segregation complex.

Defendant Matthew Frank is Secretary of the Wisconsin Department of Corrections. Defendant Gary McCaughtry is the warden of Waupun Correctional Institution. Defendant Curtis Janssen is the unit manager of the health and segregation complex at Waupun. Defendant Steven Schueler is a captain at Waupun; he "runs" the health and segregation complex.

### A. *Paper Gown Restriction*

Beginning on May 5, 1999, plaintiff was required to wear a paper gown for 40 days. He did not receive a hearing until after the restriction had been imposed. After the hearing, plaintiff was sentenced to three days of adjustment segregation and ordered to pay $1.76 in restitution. On March 27, 2000, he was placed on paper gown restriction for another 10 days, again before he received a hearing. He later was sentenced to six days of adjustment segregation and 30 days without exercise.

### B. *Property and Privileges*

Both the Secure Program Facility and the Waupun Correctional Institution have "level systems," in which prison officials attempt to modify inmates' behavior by granting them additional privileges after a period of time of good conduct. When plaintiff left the Secure Program Facility, he was on Level 3. However, when plaintiff was transferred to Waupun Correctional Institution, defendant Steven Schueler placed him on "entry step" status. As a result of the placement, plaintiff's property and privileges were severely restricted. Before he was transferred, plaintiff was allowed the following property and privileges: a television, food and hygiene items from the prison canteen, three 10–minute telephone calls each day, nine publications, 50 photographs, ear plugs and access to educational, religious and mental health programming. Plaintiff lost all of these privileges as a result of the transfer. Plaintiff had not engaged in any conduct that would have justified this placement. If plaintiff had been transferred into step 2 or 3 as he should have been, he would have had access to both a television and a radio.

Other inmates on plaintiff's "range" have a television and radio. Plaintiff hears these inmates clapping, cheering and yelling at sporting events on the television and singing along with songs on the radio. This noise causes plaintiff to be depressed.

### C. *Visitation*

Plaintiff is not permitted to have face-to-face visits. Instead, visits occur through a video monitor. Both the visual and audio quality of the video equipment are very poor. Plaintiff cannot clearly see his visitors' faces and most of the time he cannot hear or understand what his visitors are saying. When the equipment is not functioning, plaintiff is denied a visit, even though the health and segregation complex has an area designed for face-to-face visits. During a visit, plaintiff must wear handcuffs and a waist belt and be tethered to a concrete block while sitting on a steel stool, which is very uncomfortable. Visits are sometimes terminated without any notice.

### D. *Mental Health Care*

Plaintiff suffers from a serious mental illness. Waupun has a very low number of licensed "clinical services" staff. On June 30, 2003, plaintiff was denied a psychotropic medication known as amitriptyline because prison staff failed to order a refill of plaintiff's prescription. As a result, plaintiff suffered a panic attack, cold sweats, tremors and nightmares. When plaintiff pressed his medical emergency button, he was told that there would be no health services staff in the prison until the following morning. The officer who spoke to

plaintiff through the intercom neither came to plaintiff's cell to check on him nor attempted to contact medical staff.

### E. *Other Conditions of Confinement*

Plaintiff's cell has no windows and has a "boxcar" style door. The cell is illuminated 24 hours a day. As a result, it is difficult or impossible for plaintiff to sleep at night. Plaintiff experiences migraine headaches, pain and soreness in his eyes and blurry vision because of the constant illumination. The ventilation system is poor as is the cooling and heating. Plaintiff receives no outdoor recreation.

## DISCUSSION

### I. SCREENING UNDER § 1915A

#### A. *Paper Gown Restriction*

■ I understand plaintiff to contend that his right to due process was violated when he was required to wear a paper gown before he received a hearing. (Plaintiff alleges that prison staff use various other "management tools" to discipline inmates, but he does not allege that *he* has been subjected to these restrictions. Accordingly, I conclude that plaintiff does not have standing to challenge their implementation. ) Unfortunately for plaintiff, the due process clause does not apply to his situation. Like many other prisoners who have filed lawsuits in this court, plaintiff appears to believe that he is entitled to a hearing before prison officials take any action that is adverse to him. His notion of fairness may support his view, but case law interpreting the Fourteenth Amendment does not. Although the due process clause does require hearings in some instances, it does so only when an individual has been deprived of his or her "liberty" or "property" within the meaning of the Fourteenth Amendment. In the prison context, due process applies in very limited situations. Even decisions having a substantial adverse impact on a prisoner, such as a transfer to a more restrictive prison or temporary placement in disciplinary segregation, do not trigger the protections of the due process clause. *E.g., Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Thomas v. Ramos,* 130 F.3d 754 (7th Cir.1997).

In *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that a prisoner has been deprived of "liberty" under the Fourteenth Amendment in only two situations: (1) when the duration of his confinement is increased; and (2) when he is subjected to an "atypical and significant hardship." (I note that, under *Sandin,* 515 U.S. at 483–84, 115 S.Ct. 2293, atypical and significant hardships trigger due process protections only when an inmate points to a state law that gives rise to a liberty interest. Otherwise, an inmate must show that he is subjected to conditions that "excee[d] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id.* at 484, 115 S.Ct. 2293. However, neither the Supreme Court nor the Court of Appeals for the Seventh Circuit has explained how these two standards differ.) Plaintiff does not allege that his discipline resulted in an increase of his sentence. Further, I cannot conclude that being forced to wear a paper gown is an atypical and significant hardship when the court of appeals has found more severe restrictions as failing to meet that standard. *E.g., Thielman v. Leean,* 282 F.3d 478, 484 (7th Cir.2002) (use of waist belts and leg chains during transport); *Higgason v. Farley,* 83 F.3d 807 (7th Cir.1996) (frequent placement in "lockdown" status; denial of educational programs). Accordingly, this claim will be dismissed as legally frivolous.

#### B. *Property and Privileges*

■ Plaintiff alleges that as a result of his transfer to Waupun, his placement

in the level system was lowered, meaning that many of his privileges were reduced or eliminated. It is not clear whether plaintiff means to contends that this loss violated his right to due process under the Fourteenth Amendment, his right to be free from cruel and unusual punishment under the Eighth Amendment or another right. To the extent that plaintiff means to assert a due process claim, I conclude that such a claim would be legally frivolous for the same reasons as plaintiff's claim about the paper gown restriction. I cannot conclude that being denied a television and radio is an atypical and significant hardship under *Sandin.* Similarly, the Eighth Amendment requires that prisoners receive "the minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). It does not regulate the privileges and property to which inmates are entitled.

■ However, plaintiff may state a claim under the First Amendment with respect to some of the privileges that he alleges have been denied to him. For example, plaintiff alleges that before his transfer, he was entitled to three 10–minute phone calls each day and nine publications. He alleges that he is not allowed either of those things at Waupun. Inmates have a First Amendment right both to communicate with nonprisoners over the telephone and receive and read publications. *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *Duran v. Elrod,* 542 F.2d 998 (7th Cir. 1976). In addition, denying access to the telephone may violate an inmate's right to counsel and right of intimate association. *Murphy v. Walker,* 51 F.3d 714, 718 (7th Cir.1995); *Washington v. Reno,* 35 F.3d 1093, 1100 (6th Cir.1994).

It is not clear from plaintiff's complaint whether he is being denied all use of the telephone and access to publications or whether his access is simply more limited than it was before. At this stage of the proceedings, I will assume that the new restrictions are significant enough to implicate plaintiff's constitutional rights. If plaintiff can prove that his constitutional rights *have* been "impinged," defendants will have to show that the restrictions are reasonably related to a legitimate penological interest. *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Accordingly, plaintiff will be allowed to proceed on this claim against defendant Schueler, who placed plaintiff on "entry step," and against defendants McCaughtry and Frank, who at this stage I will assume were personally involved in enacting the policies at Waupun that control the privileges that inmates receive.

### C. *Visitation*

■ Plaintiff alleges that he is denied contact visits with his family and friends. Although plaintiff is allowed to visit via a video monitor, he alleges that these visits are often denied as well because of technical problems with the video equipment. In *Overton v. Bazzetta,* 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003), the Supreme Court assumed that prisoners retain some right of intimate association while incarcerated. The Court reviewed a prison policy restricting visitation privileges under the standard set forth in *Turner.* *See also Mayo v. Lane,* 867 F.2d 374 (7th Cir.1989) (assuming that prisoners retain limited constitutional right to associate with family members). Defendants may well have legitimate penological reasons for limiting plaintiff's contact visits, but I cannot assume this to be the case. *Lindell v. Frank,* 377 F.3d 655, 658, 2004 WL 1595246, at *2 (7th Cir.2004). Accordingly, I will allow plaintiff to proceed on this claim. Further, I will assume that each of the four named defendants were personally involved in restricting plaintiff's

visitation. However, plaintiff is advised that at later stages of the litigation, he will have to prove that each defendant knew about the alleged violation and facilitated it, approved it, condoned it or turned a blind eye for fear of what he might see. *Morfin v. City of Chicago,* 349 F.3d 989, 1001 (7th Cir.2003).

■ Plaintiff alleges also that during visits he was forced to wear handcuffs and a waist belt and be tethered to a concrete block while sitting on a steel stool. Plaintiff does not allege that prison staff impose these restraints to humiliate him or that visiting under these conditions causes him any harm. *See Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (Eighth Amendment violated by tying prisoner to hitching post for seven hours in hot sun without bathroom breaks when there was no penological reason for doing so). Rather, he alleges only that the restraints made him uncomfortable. However, the Supreme Court has made it clear that inmates are not entitled under the Constitution to comfortable conditions. *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Accordingly, this claim will be dismissed as legally frivolous.

### D. *Excessive Noise*

■ Plaintiff alleges that he is forced to listen to other inmates shout while they watch television or sing along with the radio. Although prison officials may violate an inmate's Eighth Amendment rights by subjecting him to excessive noise, this is only when they are deliberately indifferent to a substantial risk that the noise will cause the inmate serious harm. *Antonelli v. Sheahan,* 81 F.3d 1422, 1433 (7th Cir. 1996); *Lunsford v. Bennett,* 17 F.3d 1574 (7th Cir.1994). It cannot be reasonably inferred from plaintiff's allegations that the shouting and singing subjected him to a risk of serious harm or that any prison officials were aware of such a risk. Plaintiff does not allege that the noise was so severe and prolonged that he could not sleep, think or concentrate for days on end. *Keenan v. Hall,* 83 F.3d 1083, 1089 (9th Cir.1996) (issue of fact existed on Eighth Amendment excessive noise claim when plaintiff adduced evidence that "at all times day and night inmates were 'screaming, wailing, crying, singing and yelling,' often in groups, and that there was a 'constant, loud banging' "). Although plaintiff alleges that he was "depressed" by the noise, I cannot infer reasonably from plaintiff's complaint that the noise caused him an injury significant enough to give rise to an Eighth Amendment violation. Accordingly, this claim will be dismissed as legally frivolous.

### E. *Constant Illumination*

■ Plaintiff alleges that his cell is illuminated 24 hours a day and, as a result, it is "difficult or impossible" for him to sleep. In addition, plaintiff alleges that he suffers from headaches, sore eyes and blurry vision because of the constant lighting. Constant illumination may violate the Eighth Amendment if it causes sleep deprivation or leads to other serious physical or mental health problems. *E.g., Keenan,* 83 F.3d at 1089. Therefore, I will allow plaintiff to proceed on this claim against the four named defendants.

Plaintiff does not allege how bright the light is. He is advised that in previous cases, I have concluded that a 5–watt bulb does not rise to the level of an Eighth Amendment violation. *E.g., Pozo v. Hompe,* 02–C–12–C, 2003 WL 23185882 (W.D. Wis. April 8, 2003). To obtain relief under the Eighth Amendment, plaintiff will have to show either that he is subjected to more intense lighting or that defendants were aware that because of his mental illness, even a minimal light would

subject him to a substantial risk of serious harm yet they did not take any actions to alleviate that risk, such as make available a sleep mask for his eyes when he is trying to sleep.

### F. *Excessive Heat and Cold*

■ Prisoners have a right under the Eighth Amendment to be free from extreme hot and cold temperatures. *Shelby County Jail Inmates v. Westlake,* 798 F.2d 1085, 1087 (7th Cir.1986). Plaintiff alleges only that the ventilation, cooling and heating at Waupun is "poor," not that the temperatures are so extreme that he was subjected to a substantial risk of serious harm. At most, I could reasonably infer that the petitioner's cell temperatures were uncomfortable, but this is insufficient to state a claim for cruel and unusual punishment. *Dixon v. Godinez,* 114 F.3d 640, 644 (7th Cir.1997) ("just because low temperature forces a prisoner to bundle up indoors during winter does not mean that prison conditions violate the Eighth Amendment"). This claim will be dismissed as legally frivolous.

### G. *Outdoor Recreation*

■ Plaintiff includes one sentence in his complaint that he does not receive any outdoor recreation. Unfortunately for plaintiff, the Court of Appeals for the Seventh Circuit has held the prisoners do not have a constitutional right to receive their recreation outside. *Thomas v. Ramos,* 130 F.3d 754 (7th Cir.1997); *but see Lopez v. Smith,* 203 F.3d 1122 (9th Cir.2000) (outdoor exercise required under Eighth Amendment). Although inmates do have a constitutional right to maintain their health, which includes a right to adequate exercise, *e.g., Harris v. Fleming,* 839 F.2d 1232, 1236 (7th Cir.1988), plaintiff does not allege that his opportunities for *indoor* exercise were insufficient. Therefore, this claim will be dismissed for failure to state a claim upon which relief may be granted.

### H. *Mental Health Care*

■ Plaintiff's complaint contains three allegations about the adequacy of mental health care at Waupun: (1) he receives no "mental health programming"; (2) there are not enough licensed mental health care providers; and (3) plaintiff was denied a dose of a prescribed medication and later denied any treatment when he suffered a panic attack, cold sweats, tremors and nightmares as a result of the missed dose. It is well established that prisoners have a right to receive adequate medical care. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). There can be little doubt that this right encompasses a right to receive mental health treatment. *Jones 'El v. Berge,* 164 F.Supp.2d 1096 (W.D.Wis.2001) (citing *Meriwether v. Faulkner,* 821 F.2d 408, 413 (7th Cir.1987); *Wellman v. Faulkner,* 715 F.2d 269, 272 (7th Cir.1983)); *Gates v. Cook,* 376 F.3d 323, 342–43 (5th Cir.2004) (under Eighth Amendment, "mental health needs are no less serious than physical needs"). *But see Lewis v. Sullivan,* 279 F.3d 526, 529 (7th Cir.2002) (prisoners "do not have a *fundamental* right to psychiatric care at public expense") (dicta) (emphasis in original).

To state a claim of cruel and unusual punishment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106, 97 S.Ct. 285. Therefore, plaintiff must allege facts from which it can be inferred that he had a serious medical need (objective component) and that defendant was deliberately indifferent to this need (subjective component). *Estelle,* 429 U.S. at 104, 97 S.Ct. 285; *see also Gutierrez v. Peters,* 111 F.3d 1364, 1369 (7th Cir.1997). Attempting to define "serious medical needs," the Court of Appeals for the Seventh Circuit has held that they encompass

not only conditions that are life-threatening or that carry risks of permanent, serious impairment if left untreated, but also those in which the deliberately indifferent withholding of medical care results in needless pain and suffering. *Gutierrez,* 111 F.3d at 1371.

The Supreme Court has held that the subjective component of deliberate indifference requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. It is not enough that he "should have known" of the risk. Rather, the official must know there is a risk and consciously disregard it. *Higgins v. Correctional Medical Services of Illinois,* 178 F.3d 508, 511 (7th Cir. 1999). Although deliberate indifference may be found where "the medical treatment is 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition,'" *Snipes,* 95 F.3d at 592 (citations omitted), inadvertent error, negligence, gross negligence or even ordinary malpractice are insufficient grounds for invoking the Eighth Amendment. *Vance v. Peters,* 97 F.3d 987, 992 (7th Cir.1996). "[D]ifferences in opinion between the patient and the doctor [regarding medical treatment] never give rise to a constitutional claim." *Higgins v. Correctional Medical Services of Illinois, Inc.,* 8 F. Supp 2d. 821, 830 (N.D.Ill.1998).

Plaintiff's first two allegations are interrelated. To the extent that plaintiff is not receiving adequate treatment, part of the reason may be that the medical staff is insufficient. Staff that are untrained or too few in numbers may contribute to an Eighth Amendment violation. *Wellman,* 715 F.2d at 272; *see also Ramos v. Lamm,* 639 F.2d 559, 578 (10th Cir.1980); *Carty v. Farrelly,* 957 F.Supp. 727, 738–39 (D.V.I.

1997); *Inmates of Occoquan v. Barry,* 717 F.Supp. 854, 868 (D.D.C.1989). Although plaintiff's allegations are scant, I conclude that he has alleged the bare minimum necessary to state a claim for a violation of his Eighth Amendment right to receive adequate medical care. Plaintiff alleges that he is mentally ill. Although it appears from plaintiff's third allegation that he is receiving *some* treatment for his mental illness in the form of medication, I will assume at this stage of the proceedings that this is insufficient to alleviate a substantial risk of serious harm to plaintiff's mental health. In addition, I will assume that defendants were aware of this risk and intentionally or recklessly failed to act to prevent that risk.

 I conclude that plaintiff's allegation that he was denied medication and later treatment for the symptoms caused by the missed dose states an independent claim under the Eighth Amendment. Refusing to provide prescribed medication may violate the Constitution. *Walker v. Benjamin,* 293 F.3d 1030 (7th Cir.2002); *Murphy v. Walker,* 51 F.3d 714, 720 (7th Cir.1995). However, as with any other Eighth Amendment claim, plaintiff will have to show both that the denial of the medication caused a substantial risk of serious harm to his health *and* that defendants were deliberately indifferent to his health. I note that in plaintiff's administrative exhaustion materials, which he has attached to his complaint, an inmate complaint examiner wrote that, according to health services staff, missing one dose of amitriptyline would "not cause the situation or symptoms described in the complaint." *Albany Bank & Trust Co. v. Exxon Mobil Corp.,* 310 F.3d 969 (7th Cir. 2002) (documents attached to complaint become part of it for all purposes). Plaintiff may have to submit "verifying medical evidence" that his symptoms were caused

by his missed dose of medication. *Walker,* 293 F.3d 1030 at 1038; *Langston v. Peters,* 100 F.3d 1235, 1240 (7th Cir.1996). Further, plaintiff will have to do more than prove that a prison official was negligent in failing to provide medication. *Vance,* 97 F.3d at 992. For example, plaintiff may be unable to prevail on his claim if the missed dose was simply a result of staff's failure to realize that plaintiff's prescription was about to run out. However, even if plaintiff's symptoms were not caused by lack of medicine or by staff's deliberate indifference to his health, he may have a claim against the prison official who refused to come to his aid when he asked for help.

Another issue related to this claim is that plaintiff does not identify the person or persons responsible for the denial. "[W]hen the substance of a pro se civil rights complaint indicates the existence of claims against individual officials not named in the caption of the complaint, the district court must provide the plaintiff with an opportunity to amend the complaint." *Donald v. Cook County Sheriff's Department,* 95 F.3d 548, 555 (7th Cir. 1996); *see also Duncan v. Duckworth,* 644 F.2d 653, 655–56 (7th Cir.1981) (if prisoner does not know name of defendant, court may allow him to proceed against administrator for purpose of determining defendants' identity). Accordingly, plaintiff will be granted leave to proceed against defendant McCaughtry for the purpose of discovering the names of the other individuals who are allegedly responsible for denying him medication. Early on in this lawsuit, Magistrate Judge Stephen Crocker will hold a preliminary pretrial conference. At the time of the conference, the magistrate judge will discuss with the parties the most efficient way to obtain identification of the unnamed defendants and will set a deadline within which plaintiff is to amend his complaint to include the unnamed defendants.

## II. *Social Isolation and Sensory Deprivation*

Plaintiff has styled his complaint similarly to the plaintiffs in *Jones 'El v. Berge,* No. 00–C–421–C, 2003 WL 23274551 (W.D.Wis.2003), which is not surprising because plaintiff was a member of the class in *Jones 'El.* In that case, I allowed the inmates at the Wisconsin Secure Program Facility (then known as the Supermax Correctional Institution) to proceed as a class on a claim that their conditions of confinement subjected them to social isolation and sensory deprivation. The plaintiffs alleged that many of their conditions had a "mutually enforcing effect that produce[d] the deprivation of a single identifiable human need," *Wilson v. Seiter,* 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), the need for human interaction and sensory stimulation. Plaintiff complains about a number of the same conditions that were at issue in *Jones 'El*: constant illumination, lack of access to the outdoors, a windowless cell with a boxcar door and limited visitation.

However, I cannot conclude that plaintiff states a claim for relief under the theory recognized in *Jones 'El.* The key part of the claim in *Jones 'El* was that the inmates were denied almost all contact with other human beings, whether it was visitors, prison staff or other prisoners. Although plaintiff alleges that he is not allowed contact visits, he does not allege the complete isolation that was alleged in *Jones 'El.* I can only assume that plaintiff does receive some time out of his cell, that he is not monitored by video only and that he interacts with other prisoners. Thus, although plaintiff's allegations suggest severe conditions, they do not suggest that he is deprived of all human interaction and sensory stimulation. This claim will be dismissed for failure to state a claim upon which relief may be granted.

### III. MOTION FOR APPOINTMENT OF COUNSEL AND TO PROCEED AS A CLASS ACTION

Plaintiff has filed a motion for class certification. In order to certify a class action, the court must find, among other things, that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). I cannot make this finding in the present action for two reasons.

First, plaintiffs are not represented by an attorney, and it appears from the complaint and from the circumstances that none of the named plaintiffs is an attorney. Since absent class members are bound by a judgment whether for or against the class, they are entitled at least to the assurance of competent representation afforded by licensed counsel. *Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975); *see also Ethnic Awareness Organization v. Gagnon,* 568 F.Supp. 1186, 1187 (E.D.Wis.1983); *Huddleston v. Duckworth,* 97 F.R.D. 512, 514–15 (N.D.Ind.1983)(prisoner preceeding *pro se* not allowed to act as class representative). Second, even lawyers may not act both as class representative and as attorney for the class because that arrangement would eliminate the checks and balances imposed by the ability of the class representatives to monitor the performance of the attorney on behalf of the class members. *See e.g., Sweet v. Bermingham,* 65 F.R.D. 551, 552 (1975); *Graybeal v. American Saving & Loan Ass'n,* 59 F.R.D. 7, 13–14 (D.D.C. 1973); *see also Susman v. Lincoln American Corp.,* 561 F.2d 86, 90 n. 5 (7th Cir. 1977), *appeal after remand,* 587 F.2d 866 (1978), *cert. denied,* 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 775 (1980); *Conway v. City of Kenosha,* 409 F.Supp. 344, 349 (E.D.Wis.1975)(plaintiff acting both as class representative and as class attorney precludes class certification). Consequently, class certification will be denied.

I note that even if these procedural barriers to class certification did not exist, plaintiff has not shown that this case should proceed as a class action. As a basis for his motion, he states only: "At any given time 180 inmates are being exposed to the cruel and unusually harsh conditions which [are] the focus of these actions." This one allegation is insufficient to show that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; and (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class. Plaintiff must show that each of these requirements are satisfied before he could proceed as a class.

Also, plaintiff has moved for appointment of counsel. He has complied with the requirement of *Jackson v. County of McLean,* 953 F.2d 1070 (7th Cir.1992), by submitting the letters of several lawyers who have declined to represent him in this case. Nevertheless, I decline to appoint counsel for plaintiff at this time. In deciding whether to appoint counsel in a particular case, a court must determine whether the plaintiff is competent to represent himself given the complexity of the case, and if he is not, whether the presence of counsel would make a difference in the outcome of his lawsuit. *Zarnes v. Rhodes,* 64 F.3d 285 (7th Cir.1995) (citing *Farmer v. Haas,* 990 F.2d 319, 322 (7th Cir.1993)).

I acknowledge that plaintiff alleges that he is mentally ill and therefore is incompetent to represent himself. However, plaintiff's complaint is clearer and more coherent than most others drafted by prisoners. It is true that some of plaintiff's claims could involve complex factual and legal questions, particularly his claim regarding the adequacy of mental health care at Waupun. Even if I were to assume, however, that plaintiff is not capable of repre-

senting himself, it is too early in the case to make a determination whether plaintiff's claim is sufficiently meritorious such that appointing counsel would make a difference in the case.

Lawyers who accept appointments to represent pro se plaintiffs in civil cases are not guaranteed any compensation. Thus, before this court takes the significant step of seeking out a lawyer willing to take the case, the court has an obligation to insure that the issues raised in a particular case are both substantial and meritorious. Further, the number of lawyers able to take court appointments is very limited. Thus, it is simply impossible to accommodate all of the requests of pro se plaintiffs, mostly prisoners, who request a lawyer. Accordingly, I will deny plaintiff's motion to appoint counsel without prejudice to his renewing it at some later stage of the proceedings.

The next step is for petitioner to serve his complaint on respondent. Under Fed. R.Civ.P. 4(m), a plaintiff has 120 days after filing a complaint in which to serve the defendant. However, that is an outside limit with few exceptions. This court requires that a plaintiff act diligently in moving her case to resolution. If petitioner acts promptly, he should be able to serve his complaint on the respondent well before the deadline for doing so established in Rule 4.

To help petitioner understand the procedure for serving a complaint on an individual, I am enclosing with this memorandum a copy of a document titled "Procedure for Serving a Complaint on Individuals in a Federal Lawsuit." In addition, I am enclosing to petitioner an extra copy of his complaint and forms he will need to send to the defendant in accordance with the procedures set out in Option 1 of the memorandum.

ORDER

IT IS ORDERED that

1. Plaintiff Kurtis King is GRANTED leave to proceed under 28 U.S.C. § 1915 on his claims that

(1) Defendants Matthew Frank, Gary McCaughtry and Steven Schueler eliminated or reduced plaintiff's telephone privileges, in violation of his right of free speech and intimate association;

(2) Defendants Frank, McCaughtry and Schueler restricted the publications that he could receive, in violation of plaintiff's right of free speech;

(3) Defendants Frank, McCaughtry, Curtis Janssen and Schueler denied plaintiff contact visitation and limited his video visitation, in violation of his right of intimate association;

(4) Defendants Frank, McCaughtry, Janssen and Schueler kept plaintiff's cell illuminated 24 hours a day, in violation of plaintiff's right to be free from cruel and unusual punishment;

(5) Defendants Frank, McCaughtry, Janssen and Schueler failed to provide plaintiff with adequate mental health care, in violation of plaintiff's right to be free from cruel and unusual punishment;

(6) A yet to be named defendant or defendants denied plaintiff his prescribed medication, in violation of his right to be free from cruel and unusual punishment;

(7) A yet to be named defendant refused to come to plaintiff's aid while he was suffering symptoms as a result of not receiving medication, in violation of his right to be free from cruel and unusual punishment.

2. The following claims are DISMISSED for failure to state a claim upon which relief may be granted:

(1) Defendants denied plaintiff outdoor recreation, in violation of his right to be free from cruel and unusual punishment;

(2) Defendants denied plaintiff human interaction and sensory stimulation, in violation of his right to be free from cruel and unusual punishment.

3. The following claims are DISMISSED as legally frivolous:

(1) Defendants required plaintiff to wear a paper gown, in violation of his right to due process of law;

(2) Defendants denied plaintiff access to a television, radio and other privileges, in violation of his right to due process of law and his right to be free from cruel and unusual punishment;

(3) Defendants required plaintiff to wear restraints during video visits, in violation of his right to be free from cruel and unusual punishment;

(4) Defendants subjected plaintiff to excessive noise, in violation of his right to be free from cruel and unusual punishment;

(5) Defendants Frank, McCaughtry, Janssen and Schueler subjected plaintiff to excessive heat and cold and inadequate ventilation, in violation of his right to be free from cruel and unusual punishment.

4. Plaintiff's motions for class certification and appointment of counsel are DENIED.

5. Plaintiff is directed to promptly serve his complaint on respondents Frank, McCaughtry, Janssen and Schueler and file proof of service of his complaint as soon as service has been accomplished. If, by October 1, 2004, plaintiff fails to submit proof of service of his complaint on the respondent or explain his inability to do so, I will direct petitioner to show cause why his case should not be dismissed for lack of prosecution.

6. For the remainder of this lawsuit, plaintiff must send defendants a copy of every paper or document that he files with the court. Once plaintiff learns the name of the lawyer that will be representing the defendants, he should serve the lawyer directly rather than defendants. The court will disregard documents plaintiff submits that do not show on the court's copy that plaintiff has sent a copy to defendants or to defendants' attorney.

7. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.